MADELEINE M. LANDRIEU, Judge.
|, Melvin Scott and Darron D. Williams appeal their convictions of and sentences for distribution of heroin. For the reasons that follow, we affirm the convictions and sentences of Mr. Scott and Mr. Williams.

STATEMENT OF THE CASE

On May 18, 2010, Mr. Scott and Mr. Williams were each charged by bill of information with one count of distribution of *503 heroin.[1] They each pled.not guilty to the charges at their arraignment on May 20, 2010. After a hearing on October 7, 2010, the trial court found probable cause as to both defendants and denied their motions to suppress evidence and identification. A jury trial was conducted, and the defendants were both found guilty as charged.
Both defendants filed motions for new trial. Mr. Williams’ motion was filed on March 1, 2011, and was denied after a hearing. Mr. Scott filed a combined motion for new trial and post judgment verdict of acquittal. His motions |2were considered and denied at the sentencing hearing on May 17, 2012.[2] Both defendants waived delays.
Thereafter, the trial court sentenced each defendant to of five years at hard labor. Both defendants pled guilty to a multiple bill of information and waived delays. The trial court then vacated the prior sentences and sentenced each defendant to twenty-five years at hard labor. The trial court denied Mr. Scott’s motion for reconsideration of sentence; it also denied Mr. Williams’ motion to contest the constitutionality of the mandatory minimum sentence as applied.
This appeal follows.

FACTS

New Orleans Police Det. Jason Germann of the Sixth District Narcotics Unit testified that on May 10, 2010, he was conducting surveillance near the intersection of Washington Avenue and LaSalle Street. He observed Mr. Scott loitering in the 2700 block of LaSalle Street between Friendly’s Grocery and a vacant house. The officer stated that he observed four individuals approach Mr. Scott. Each person gave Mr. Scott currency of an indeterminate amount. Mr. Scott then started walking in an uptown direction towards Washington Avenue. Mr. Scott then approached the passenger of a white Chevy Malibu. The passenger gave Mr. Scott currency, and then Mr. Scott walked down the alleyway between Friendly’s Grocery and the vacant house. When Mr. Scott returned from the alley, he walked back to the Chevy Malibu and handed the passenger a silver foil object. Mr. Scott then returned to the four people who had approached him earlier and gave each person a silver foil object. Det. Germann obtained a partial license plate 1 ¡¡number of the Chevy Malibu and contacted his fellow officers to search for the vehicle.
Thereafter, Det. Germann observed the transaction between Mr. Scott and Mr. Williams. Det. Germann stated that he saw Mr. Williams exit a Buick and meet with Mr. Scott. Mr. Williams gave Mr. Scott money, and Mr. Scott reached into his waist and pulled out a small plastic bag with a silver object. Mr. Scott took the silver object out of the bag and gave it to Mr. Williams. Mr. Williams went back to his vehicle and handed the object to the passenger, who was later identified as Dru Lilly. Mr. Williams drove off in a downtown direction. At that point, Det. Ger-mann decided to terminate the surveillance *504 and arrest Mr. Scott for distribution of narcotics.
Det. Kyle Hendricks testified that he was in a police vehicle by himself when he received information from Det. Germann about the surveillance and was asked to take down the two vehicles involved. Det. Hendricks was not able to locate the Chevy Malibu, but he did locate the Buick, which was travelling in a downtown direction on LaSalle Street towards Jackson Avenue. Det. Hendricks pulled behind the vehicle and activated his lights and sirens. The driver of the Buick, Mr. Williams, pulled into the parking lot of a grocery store on the corner of Jackson and La-Salle. Sgt. Castellón and Det. Hunter pulled their vehicle in front of the Buick.
As Det. Hunter got out of his vehicle and approached the passenger side of the Buick, he observed that the passenger, Mr. Lilly, was “nervous and wide-eyed.” Det. Hunter saw that Mr. Lilly had a small object in his hand and was reaching down to his right shoe area, as if to conceal the object in his right shoe. Det. Hunter ordered Mr. Lilly out of the vehicle. Once Mr. Lilly stepped out of the |4vehicle, Det. Hunter placed him in handcuffs. Det. Hunter then walked Mr. Lilly over to Det. Hendricks’ vehicle and informed Det. Hendricks that Mr. Lilly had made a movement down to his right shoe with an object.
Det. Hendricks advised Mr. Williams and Mr. Lilly that they were under investigation for narcotics violations. The detective conducted a pat down search of Mr. Lilly and retrieved a silver foil packet from the outer part of his right sock. The foil contained a powder that appeared to be consistent with heroin. After Mr. Williams and Mr. Lilly were arrested, Det. Hendricks relocated them to the 2700 block of LaSalle Street, where he assisted in Mr. Scott’s arrest. No narcotics were found on him, but Mr. Scott was in possession of currency in the amount of two hundred thirteen dollars.
John Palm, Jr., a criminalist with the New Orleans Police Department, was stipulated to be an expert in the identification of controlled dangerous substances. He testified that the powder contained in the foil wrap found on Mr. Lilly had tested positive for heroin.

ERRORS PATENT

A review of the record for errors patent reveals none.

ASSIGNMENTS OF ERROR

On appeal, Mr. Scott raises three assignments of error: that the evidence was insufficient to support his conviction, that the trial court erred in denying his motion for new trial, and that the trial court erred when it considered and denied his motion for new trial without the presence of his counsel. Mr. Williams also raises three assignments of error: that the evidence was insufficient to support his conviction, that the trial court erred in denying his motion for new trial, and that |fithe trial court erred in limiting defense counsel’s cross-examination of Det. Germann at trial. We discuss each defendant’s assignments of error separately.
I. Mr. Scott’s Assignments Of Error
A. Sufficiency of the Evidence
Mr. Scott argues that the State failed to produce sufficient evidence, beyond a reasonable doubt, to support his conviction for distribution of heroin. In his argument, Mr. Scott suggests that Det. Germann’s testimony was not credible because it was not believable that the officer could have conducted surveillance in broad daylight without being noticed.
When issues are raised on appeal as to the sufficiency of the evidence and as to one or more trial errors, the reviewing *505 court should first determine the sufficiency of the evidence. State v. Hearold, 603 So.2d 731, 734 (La.1992); State v. Marcantel, 2000-1629, p. 8 (La.4/3/02), 815 So.2d 50, 55.
When reviewing the sufficiency of the evidence to support a conviction, Louisiana appellate courts are controlled by the standard enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under this standard, the appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt. State v. Neal, 2000-0674, p. 9 (La.6/29/01), 796 So.2d 649, 657. When circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 requires that assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. Id. Ultimately, all evidence, both direct and circumstantial must be | (¡sufficient under Jackson to prove guilt beyond a reasonable doubt to a rational jury. Id.
Moreover, in the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient to support a factual conclusion. State v. Robinson, 2002-1869, p. 16 (La.4/14/04), 874 So.2d 66, 79. The trier of fact makes credibility determinations and may, within the bounds of rationality, accept or reject the testimony of any witness; thus, a reviewing court may impinge on the fact finder’s discretion only to the extent necessary to guarantee the fundamental protection of due process of law. State v. Higgins, 2003-1980, p. 17 (La.4/1/05), 898 So.2d 1219, 1232.
La. R.S. 40:966(A) provides, in pertinent part, “[ejxcept as authorized by this Part, it shall be unlawful for any person knowingly or intentionally: (1) To produce, manufacture, distribute or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance or controlled substance analogue classified in Schedule I.”
To support a conviction under La. R.S. 40:966(A), the State must prove that the defendant distributed a controlled dangerous substance classified in Schedule I. Heroin is a Schedule I controlled dangerous substance. La. R.S. 40:961(11). The term “distribute” is defined as “to deliver a controlled dangerous substance ... by physical delivery.” La. R.S. 40:961(14). “Delivery” is defined as the “transfer of a controlled dangerous substance whether or not there exists an agency relationship.” La. R.S. 40:961(10).
A defendant may be guilty of distribution as a principal if he aids and abets in the distribution or if he directly or indirectly counsels or procures another to distribute a controlled dangerous substance. State v. Bartley, 00-1370, p. 5 (La.App. 5 Cir. 2/14/01), 782 So.2d 29, 31-32. To support a defendant’s conviction as a principal, the State must show that the defendant had the requisite mental state for the crime. State v. Saylor, 01-0451, p. 7 (La.App. 5 Cir. 11/27/01), 802 So.2d 937, 941. Distribution of a controlled dangerous substance only requires general intent. State v. Banks, 307 So.2d 594, 596 (La.1975). General criminal intent is present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act. La. R.S. 14:10(2).
*506 In the present case, Det. Germann testified that he saw Mr. Scott give Mr. Williams and the four pedestrians silver foil objects in exchange for currency. Det. Germann also stated that he observed Mr. Williams get into the Buick and hand Mr. Lilly the silver foil object. Det. Hendricks and Det. Hunter testified that the silver foil object, which turned out to be heroin, was found in Mr. Lilly’s shoe. This testimony was sufficient to establish, beyond a reasonable doubt, that Mr. Scott distributed heroin to Mr. Williams.
Further, Mr. Scott’s arguments about Det. Germann’s credibility are without merit. Credibility is an issue to be determined by the trier of fact. The jury heard the officer testify that he conducted surveillance for one and one half hours, using high-powered binoculars. The officer also stated that he had unobstructed view of the area. When questioned about his specific location on cross-examination, Det. Germann declined to give such information because there were ongoing surveillance and investigations in the area. While the officer would not give his specific location, the jury heard the officer’s testimony and determined that it was credible. Such discretion was within the purview of the trier of fact.
1 RThis assignment of error is without merit.
B. Trial Court’s Denial of Motion for New Trial
Mr. Scott argues that the trial court erred by denying his motion for new trial for two reasons: (1) prosecutorial misconduct by the State in preventing Mr. Lilly, the passenger in the Buick driven by Mr. Williams, from testifying; and (2) the ends of justice would have been served by the granting of a new trial because the State improperly required both defendants to agree to a potential plea deal.
La.C.Cr.P. article 851 sets forth the grounds for granting a new trial:
The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
(1) The verdict is contrary to the law and the evidence;
(2) The court’s ruling on a written motion, or an objection made during the proceedings, shows prejudicial error;
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;
(4) The defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment; or
(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right.
The trial judge has much discretion in ruling on a motion for a new trial and, upon review, the appellate court may only set aside the judgment upon a finding that the trial judge exercised his discretion in an arbitrary manner. State v. Hammons, 597 So.2d 990, 994 (La.1992); State v. Lewis, 2005-0973, pp. 3M (La.App. 4 Cir. 5/24/06), 943 So.2d 1100, 1102. If the grant or denial of a new trial pursuant to *507 La.C.Cr.P. art. 851(5) is a question of law, then the appellate or ^supervisory jurisdiction of the appellate courts and Supreme Court is properly invoked. A trial court’s ruling on a motion for a new trial to serve the ends of justice is reviewable under an abuse of discretion standard. State v. Randolph, 275 So.2d 174, 177 (La.1973); State v. Guillory, 2010-1231, p. 3 (La.10/8/10), 45 So.3d 612, 614.
Mr. Scott first argues that the State acted improperly to prevent the testimony of Mr. Lilly. Because Mr. Scott did not urge this prosecutorial misconduct as a ground for his motion in the trial court, we cannot consider it on appeal. However, Mr. Scott suggests that he should be allowed to argue this ground on appeal because it was asserted by his code-fendant, Mr. Williams, in his motion for new trial. We reject that argument.[3]
Mr. Scott next argues that the State acted improperly and prejudicially when it required both defendants to agree to a potential plea deal. Specifically, Mr. Scott asserts that he was prejudiced because he was willing to accept a plea deal but his codefendant was not. This argument fails because the State has discretion to offer, or not to offer, any plea deal in a criminal matter. In the present case, the State made an offer conditioned upon the acceptance of both defendants, but apparently Mr. Williams was unwilling to accept the offer, and thus, the offer was -withdrawn. The State was under no obligation to offer Mr. Scott a separate plea deal. The trial court did not abuse its discretion in denying the motion for new trial on this basis.
This assignment of error is without merit.
hnC. Absence of Mr. Scott’s Counsel from Hearing on Motion for New Trial
Mr. Scott argues on appeal that the trial court should not have considered his motion for new trial without his counsel being present at the hearing. The record does not support Mr. Scott’s argument. Mr. Scott contends that the trial court considered his motion for new trial at the hearings on March 16, 2011, and June 17, 2011, when his trial counsel was not present. A review of the transcripts in the record reveals that the trial court was hearing evidence and testimony in relation to the motion for new trial filed by Mr. Williams on those dates. The trial court did not consider the merits of Mr. Scott’s motion for new trial until May 17, 2012, at which time, the record reflects, Mr. Scott’s trial counsel was present.
This assignment of error is without merit.
II. Mr. Williams’ Assignments Of Error

A. Sufficiency of the Evidence

Mr. Williams argues that the State failed to produce sufficient evidence, beyond a reasonable doubt, to support his conviction for distribution of heroin. He also questions Det. Germann’s credibility on the basis that there was no audio or video recordation of the officer’s surveillance. He contends that the officer’s testimony should not have been accepted because there was no corroboration of his *508 testimony. Mr. Williams also suggests that the officer’s testimony was unbelievable because the officer did not give specific information as to where he was located during the surveillance.
As discussed previously, when reviewing the sufficiency of the evidence to support a conviction, Louisiana appellate courts are controlled by the standard enunciated in Jackson v. Virginia, supra.
|nUnder that standard, it is not the function of the appellate court to reassess the credibility of witnesses or to reweigh the evidence; the reviewing court’s function is to determine the constitutional sufficiency of the evidence presented. State v. Johnson, 619 So.2d 1102, 1109 (La.App. 4th Cir.1993). Credibility determinations, as well as the weight to be attributed to the evidence, are soundly within the province of the fact finder. State v. Brumfield, 93-2404 (La.App. 4 Cir. 6/15/94), 639 So.2d 312, 316. Moreover, conflicting testimony as to factual matters is a question of weight of the evidence, not sufficiency. State v. Jones, 537 So.2d 1244, 1249 (La.App. 4th Cir.1989). Such a determination rests solely with the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. Id. A trier of fact’s determination as to the credibility of a witness is a question of fact entitled to great weight, and its determination will not be disturbed unless it is clearly contrary to the evidence. State v. Woods, 2000-2712, p. 6 (La.App. 4 Cir. 5/29/02), 828 So.2d 6, 10.
La. R.S. 40:966(A) provides, in pertinent part, “Except as authorized by this Part, it shall be unlawful for any person knowingly or intentionally: (1) To produce, manufacture, distribute or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance or controlled substance analogue classified in Schedule I.”
As discussed previously, to support a conviction under La. R.S. 40:966(A), the State must prove that the defendant distributed a controlled dangerous substance classified in Schedule I, which includes heroin. La. R.S. 40:964(B)(11).
In the present case, Det. Germann testified that he saw Mr. Scott give Mr. Williams a silver foil object in exchange for currency. The detective also stated that he observed Mr. Williams hand Mr. Lilly the silver foil object when Mr. | ^Williams got into the vehicle. Dets. Hendricks and Hunter testified that the silver foil object was found in Mr. Lilly’s shoe. The silver foil object was found to contain heroin. The testimony presented was sufficient to establish, beyond a reasonable doubt, that Mr. Williams distributed heroin to Mr. Lilly.
This assignment of error is without merit.

B. Trial Court’s Denial of Motion for New Trial

Mr. Williams next argues that the trial court erred when it denied his motion for new trial. Mr. Williams filed a motion for new trial asserting two grounds: (1) the verdict was contrary to the law and evidence; and (2) the prosecutors engaged in prejudicial misconduct by preventing the defendant from examining Mr. Lilly as a witness. He re-urges those grounds on appeal.
As noted previously, the trial judge has much discretion in ruling on a motion for a new trial and, upon review; the appellate court may only set aside the judgment upon a finding that the trial judge exercised his discretion in an arbitrary manner. State v. Lewis, supra, pp. 3-4 (La.App. 4 Cir. 5/24/06), 943 So.2d at 1102.
For the same reasons given in relation to Mr. Scott, we find that the State pro *509 duced sufficient evidence to support Mr. Williams’ conviction for distribution of heroin. Thus, the trial court did not abuse its discretion in denying the motion for new trial on the basis that the verdict was contrary to the law and evidence.
Mr. Williams also alleges that the State committed prosecutorial misconduct when the prosecutors removed Mr. Lilly from the courtroom on the morning of trial. The trial court conducted a post-trial evidentiary hearing on this issue, at 11swhich Mr. Lilly, Mr. Roman Maney (one of the assistant district attorneys handling the trial) and Mr. Sandy Gavin (the district attorney’s investigator) testified.
Mr. Lilly stated at the hearing that if he had testified at trial, he would have testified that Mr. Williams did not provide him with any heroin. He stated that he would have testified that the heroin belonged to him. Mr. Lilly provided defense counsel with an affidavit reflecting such testimony. Mr. Lilly also stated that he was removed from the Diversion Program once he provided defense counsel with the affidavit, and that he had been told he would be removed from the Diversion Program if he did not cooperate. Mr. Lilly testified that, on the morning of trial, he was removed from the courtroom and taken to the district attorney’s office. Mr. Lilly further stated that, while at the district attorney’s office, he asked if he could go the courthouse but was told he could not leave.
Assistant district attorney Maney testified that he had Mr. Lilly removed from the courtroom because he (Mr. Maney) had observed defendant Williams trying to make eye contact with Mr. Lilly prior to trial. The assistant district attorney took Mr. Lilly to the district attorney’s office out of a concern that Mr. Lilly was potentially being intimidated by the defendants. Mr. Maney stated that, prior to that time, Mr. Lilly had told him only that the heroin belonged to him; Mr. Lilly had never denied having received the drugs from Mr. Williams and Mr. Scott. Mr. Maney stated that when the trial ended, and it was determined that Mr. Lilly’s testimony was not needed by the prosecution, he telephoned Mr. Gavin and instructed him to advise Mr. Lilly that he was not needed and could leave.
Investigator Gavin testified that when he arrived at the district attorney’s office on the morning of trial, Mr. Lilly and his girlfriend were sitting in the office lobby. Mr. Gavin denied that he had prevented Mr. Lilly from going to the | ucourthouse. He testified that he had occasionally checked on Mr. Lilly and his girlfriend while they were at the District Attorney’s office to see if they wanted something to eat or drink. He had not brought Mr. Lilly to the office in the first place and was not aware of why Mr. Lilly was there. Mr. Gavin stated that when the district attorney advised him that Mr. Lilly was not needed as a witness, Mr. Gavin told Mr. Lilly he could leave. Mr. Gavin further testified that he did not know Mr. Lilly was a potential defense witness and had never seen Mr. Lilly in the courtroom.
In denying the motion for new trial, the trial court noted that Mr. Lilly was not on the defendants’ witness lists and had not been subpoenaed by the defendants. The trial court recognized that the defendants knew of Mr. Lilly’s existence and his potential testimony. The trial court also recognized that it was not uncommon to keep witnesses out of the courtroom, especially when the defendants’ family members were in the courtroom.
The United States Supreme Court has recognized that the touchstone of due process analysis in cases of alleged prosecuto-rial misconduct is the fairness of the trial, not the culpability of the prosecutor. *510 Smith v. Phillips, 455 U.S. 209, 219-20, 102 S.Ct. 940, 947, 71 L.Ed.2d 78 (1982). The prosecutor’s actions in the present case did not amount to misconduct and did not impact the fairness of the trial. The defendants were aware of Mr. Lilly’s potential testimony and could have subpoenaed him for trial. However, they chose not to do so.
Mr. Williams also suggests that the State’s removal of Mr. Lilly from the Diversion Program was an attempt to influence his testimony. Placement in the Diversion Program is similar to a plea agreement in that it is a form of contract between the defendant and the State. If the defendant fails to conform to the | ^requirements of the contract, the defendant may be removed from the program. Mr. Williams presented no evidence at the hearing to show that Mr. Lilly’s removal from the Diversion Program was an attempt by the State to influence his testimony. The trial court did not abuse its discretion when it denied the motion for new trial on this basis.
This assignment of error is without merit.

C. Trial Court’s Limiting of Defense Counsel’s Cross-Examination of Det. Germann

Mr. Williams argues that the trial court erred when it limited defense counsel’s cross examination of Det. Germann about his physical location during the surveillance.
Det. Germann testified that he conducted a surveillance of the area for one and one-half hours. He stated that he was approximately one hundred to one hundred-fifty feet from the surveillance area and had an unobstructed view. Det. Ger-mann testified that he was using high-range binoculars that allowed him to see the currency and the foil objects exchanged by the defendants. On cross-examination, defense counsel questioned Det. Germann on how he could see the small objects and asked him to reveal his specific location. Defense counsel attempted to get Det. Germann to testify as to whether he was in a vehicle and as to where the vehicle was parked. Det. Germann refused to answer those questions on the basis that answering them could jeopardize ongoing surveillance operations and investigations. The trial court declined to order Det. Germann to answer the questions. Defense counsel contends that the trial court’s ruling unconstitutionally limited his cross-examination of the witness.
In State v. Huckabay, 2000-1082, pp. 25-26 (La.App. 4 Cir. 2/6/02), 809 So.2d 1093, 1108, this Court discussed a defendant’s right to confront his accusers:
An accused is entitled to confront and cross examine the witnesses against him. La. Const. art. 1, § 16. La. C.E. art. 611(B) provides that a witness may be cross-examined on any matter relevant to any issue in the case. Due process affords a defendant the right of full confrontation and cross examination of the State’s witnesses. State v. Van Winkle, 94-0947, p. 5 (La.6/30/95), 658 So.2d 198, 201-202. The trial court has the discretionary power to control the extent of the examination of witnesses as long as the court does not deprive the defendant of his right to effective cross-examination. State v. Hawkins, 96-0766 (La.1/14/97), 688 So.2d 473.
However, evidence may be excluded if it is irrelevant. See State v. Casey, 99-0023, pp. 18-19 (La.1/26/00), 775 So.2d 1022, 1037. Further, confrontation errors are subject to the harmless error analysis so the verdict may stand if the reviewing court determines that the *511 guilty verdict rendered in the particular trial was surely unattributable to the error. State v. Broadway, 96-2659, p. 24 (La.10/19/99), 753 So.2d 801, 817.
Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject to the discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness’s story to test the witness’s perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness. State v. Nash, 475 So.2d 752, 754-755 (La.1985). The three main functions of cross-examination are: (1) to shed light on the credibility of the direct testimony; (2) to bring out additional facts related to those elicited on direct; and (3) to bring out additional facts which tend to elucidate any issue in the case. Id.
In the present case, the trial court did not abuse its discretion in limiting defense counsel’s questioning as to the officer’s specific location during the surveillance because defense counsel was allowed to extensively question the | ^officer on his ability to see the actual transactions and his observations of defendants’ movements.
This assignment of error is without merit.

CONCLUSION

For the foregoing reasons, we affirm the convictions and sentences of Mr. Scott and Mr. Williams.
AFFIRMED.

. A co-defendant, Dru Lilly, was charged in the same bill of information with possession of heroin. Mr. Lilly pled not guilty at his arraignment on May 20, 2010. On June 29, 2010, Mr. Lilly was accepted into the pre-trial Diversion Program. He was removed from the program on April 12, 2011. Mr. Lilly subsequently pled guilty on April 19, 2011, and was sentenced to four years at hard labor. However, the sentence was suspended, and Mr. Lilly was placed on active probation for four years.

. Also at the sentencing hearing, the trial court considered and denied Mr. Williams' motion to reconsider its prior denial of his motion for new trial.

. Specifically, he argues that he is entitled to a new trial because of the State’s actions in not having Mr. Lilly testify at trial. Mr. Scott relies upon La.C.Cr.P. article 842. Article 842 provides that "[i]f an objection has been made when more than one defendant is on trial, it shall be presumed, unless the contrary appears, that the objection has been made by all defendants.” However, in the present case, each defendant filed his own motion for new trial, asserting different grounds. Thus, La.C.Cr.P. article 842 is inapplicable.