Judge Roland L. Belsome
This criminal appeal is taken from the conviction and sentencing of Steven Bradley for conspiracy to commit obstruction of justice and obstruction of justice in connection with the murders of Kenneth and Lakeitha Joseph. For the reasons that follow, Mr. Bradley's convictions and sentences are affirmed.
Statement of Facts
On February 18, 2014, Elosia Hayward loaned her silver Dodge Caravan van to her brother, Kenneth Joseph and his wife, Lakeitha Joseph (collectively "the Josephs"). When the van was not returned the following morning, Ms. Hayward telephoned the Josephs throughout the day but received no response. At around six or seven o'clock that evening, Ms. Hayward, her mother and her sister went to the Josephs' home in Reserve, Louisiana. Ms. Hayward's van was not there. Upon entering the residence and finding it ransacked, they filed a missing persons' report with the St. John the Baptist Parish authorities.
Detective Sergeant Brian Schum of the St. John the Baptist Parish Sheriff's Office responded to the missing persons' report and met with Ms. Ernestine Joseph, who supplied him with the pertinent information on the Josephs. Det. Schum entered the Josephs' ransacked residence, and called the crime scene unit to process the residence. In the course of investigating the Josephs' disappearance, Detective Kirsten McAbee obtained cell phone records, which indicated that Lakeitha Joseph's last outgoing call was made the night of February 18, 2014. Further, the detective's analysis of the records indicated that Lakeitha's phone traveled from Reserve to LaPlace to Lutcher and, finally, to Kenner, Louisiana on that date. Det. McAbee confiscated a laptop computer and iPad from the Josephs' residence. During the course of her investigation, Det. McAbee obtained a search warrant for Horatio Johnson's residence at 2412 Van Arcle Drive in LaPlace, as well as the home of Brittany Martin, Horatio Johnson's girlfriend.[1]
During the investigation, Ms. Hayword's van was located in an apartment complex *97 parking lot by the Fulton County Georgia Police Department. The van was impounded and processed for forensic evidence. The forensic examiner located large blood stains on and under the second and third row seats, the floor mats and behind the side interior paneling. DNA evidence was also collected from the van.
On March 10, 2014, Det. McAbee learned that Lakeitha Joseph's body was recovered from the Intracoastal Waterway in New Orleans. At that point, the matter became a murder investigation and was turned over to New Orleans Police Department Detective Ryan Vaught. Later, on March 22, 2014, Kenneth Joseph's body was recovered from the Intracoastal Waterway. The Josephs' ankles were bound by blue nylon rope, and a thirty-pound kettlebell was attached to the rope binding Kenneth Joseph's ankles. It was later determined by a forensic pathologist that Mrs. Joseph suffered several injuries including a subscapular hemorrhage on the left side of the head, indicative of blunt trauma, but she died of asphyxia by drowning. It was determined that Mr. Joseph had also died by drowning.
The investigation led to the arrest of Horatio Johnson, Brittany Martin, Frank Mike and Steven Bradley.[2] After a jury trial, Horatio Johnson was found guilty of two counts of second degree murder, conspiracy to commit obstruction of justice, and obstruction of justice. Brittany Martin pled guilty to obstruction of justice. Frank Mike pled guilty to conspiracy to commit obstruction of justice, and two counts of obstruction of justice. Steven Bradley's jury trial resulted in his conviction for conspiracy to commit obstruction of justice, and obstruction of justice. He was sentenced to fifteen years and thirty-five years respectively.[3] Steven Bradley (hereinafter "the Defendant") appealed.
Assignments of Error
On appeal, the Defendant maintains that there was insufficient evidence to support his conviction for conspiracy to obstruct justice and his sentences are excessive.
Sufficiency of the Evidence
A claim that the evidence at trial was insufficient to support a conviction is reviewed by an appellate court applying the standard enunciated in Jackson v. Virginia , 443 U.S. 307, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979). "Under this standard, the appellate court 'must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proven beyond a reasonable doubt.' " Id.
"The principal criteria of a Jackson v. Virginia review is rationality." State v. Mussall , 523 So. 2d 1305, 1310 (La. 1988). Upon review of the record as a whole, if rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence must be adopted. Id. ; State v. Egana , 97-0318, p. 6 (La. App. 4 Cir. 12/3/97), 703 So.2d 223, 228. It is not the role of the appellate court to assess the credibility of witnesses or reweigh the evidence. State v. Scott, 2012-1603 (La. App. 4 Cir. 12/23/13), 131 So. 3d 501, 508, writ denied, 2014-0221 (La. 8/25/14), 147 So. 3d 701, and writ denied sub nom. State v. Williams , 2014-0222 (La. 8/25/14), 147 So. 3d 701. "Credibility determinations, as well as the weight to be attributed to the evidence, are soundly within the province of the trier of fact." Id. "Moreover, conflicting testimony as to factual matters is a question of weight of the evidence, not *98 sufficiency. Such a determination rests solely with the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness." Id. "Absent internal contradiction or irreconcilable conflict with the physical evidence, a single witness' testimony, if believed by the fact finder, is sufficient to support a factual conclusion." State v. Leonard, 2018-0142 (La. App. 4 Cir. 12/26/18), 262 So. 3d 378, 385-386, writ denied , 2019-0209 (La. 4/15/19).
La. R.S. 14:26(A) defines general criminal conspiracy as "the agreement or combination of two or more persons for the specific purpose of committing any crime; provided that an agreement or combination to commit a crime shall not amount to a criminal conspiracy unless, in addition to such agreement or combination, one or more of such parties does an act in furtherance of the object of the agreement or combination."
La. R.S. 14:130.1(A) defines the crime of obstruction of justice as any of the following when committed "with the knowledge that such act has, reasonably may, or will affect an actual or potential present, past, or future criminal proceeding":
(1) Tampering with evidence with the specific intent of distorting the results of any criminal investigation or proceeding which may reasonably prove relevant to a criminal investigation or proceeding. Tampering with evidence shall include the intentional alteration, movement, removal, or addition of any object or substance either:
(a) At the location of any incident which the perpetrator knows or has good reason to believe will be the subject of any investigation by state, local, or United States law enforcement officers; or
(b) At the location of storage, transfer, or place of review of any such evidence.
The knowledge requirement of La. R.S. 14:130.1(A) is met if the perpetrator merely knows that an act "reasonably may" affect a "potential" or "future" criminal proceeding. State v. Jones, 2007-1052, p. 9 (La. 6/3/08), 983 So.2d 95, 101. "The defendant must also have tampered with evidence 'with the specific intent of distorting the results' of a criminal investigation." State v. Powell , 2015-0218, p. 11 (La. App. 4 Cir. 10/28/15), 179 So.3d 721, 728 (quoting La. R.S. 14:130.1(A)(1) ). However, "nothing beyond 'movement' of the evidence is required by the statute if accompanied by the requisite intent and knowledge." Id. (citing Jones, 2007-1052, p. 10 (La. 6/3/08), 983 So.2d at 101 ).
Brittany Martin and Frank Mike both pled guilty to obstruction of justice charges. At the Defendant's trial, their testimony provided the facts and circumstances of the Defendant's involvement in the conspiracy. Ms. Martin testified that she had been in a romantic relationship with Horatio Johnson for approximately two years at the time of the murders. On February 18, 2014, Mr. Johnson requested that she meet him at a recording studio on David Drive in Kenner, Louisiana. She witnessed the Defendant and Mr. Johnson standing outside of the studio. Then, Ms. Martin drove Mr. Johnson to a warehouse near the airport. The Josephs arrived at the warehouse driving a silver van. From there, Ms. Martin and Mr. Johnson drove back to the studio with the Josephs following them. Mr. Joseph entered the studio with Mr. Johnson. A few minutes later, Mr. Johnson exited the studio and summoned Ms. Martin and Mrs. Joseph into the studio. Ms. Martin testified that as they walked into the studio Mr. Johnson began strangling Mrs. Joseph.
*99 After this incident occurred, Ms. Martin stated that she drove Mr. Johnson to several locations including a Walmart store where the couple purchased tape, kettlebells, three pairs of gloves, two hoodies, and degreaser. She also informed the jury that Mr. Johnson changed his clothes at a residence in LaPlace, Louisiana, and at another location he set the clothes he had changed out of on fire. They returned to the studio and she witnessed the Defendant exit the studio and move the silver van, that had been driven by the Josephs, to the front of the building. Shortly thereafter, the Defendant and Mr. Johnson, accompanied by "Blue" loaded two large items, which Mr. Martin suspected were the victims' bodies, into the rear of the van.[4] The Defendant drove the van accompanied by "Blue," in the front passenger seat. Mr. Johnson got into Ms. Martin's vehicle and both vehicles were driven to New Orleans East where the bodies were tossed into the Intercoastal Waterway.
Subsequent to dumping the bodies, the four drove to the Defendant's mother's home in Baton Rouge, Louisiana. Later the van was driven to another house where they cleaned the interior and exterior. Next, "Blue" and the Defendant drove the van back to New Orleans after dawn and parked it in the backyard of Frank Mike's house. Mr. Mike is the Defendant's uncle. After they spoke to Mr. Mike, the Defendant, Mr. Johnson, "Blue" and Ms. Martin returned to the New Orleans area.
Mr. Mike testified as to his participation in the conspiracy to obstruct justice and corroborated Ms. Martin's account of the van being left at his home. He further testified that the Defendant gave him permission to drive the van to Atlanta on business, but he cautioned Mr. Mike not to put anything in the back of the van because it might be stained by blood. The Defendant told Mike that he robbed the victims and "had to hit a Bitch in the head with a weight." The Defendant also told Mike that "they" got $ 200,000.00 and a "few" bricks of cocaine. When Mike opened the van door, he saw blood in the back. Mike believed that the Defendant allowed him use of the van to allow it to "cool" off. While in Atlanta, Mr. Mike washed, vacuumed, and wiped down the interior of the van prior to abandoning it in the parking lot of an apartment complex. The Defendant instructed Mr. Mike to burn the van, but he did not.
Trial testimony established that the Defendant, Ms. Martin and Mr. Mike entered into an agreement to tamper with evidence and that the Defendant or Ms. Martin or Mr. Mike committed at least one of the following overt acts in furtherance of the conspiracy: (1) removing evidence from the recording studio, including the victims' bodies, their van, and the content of the van; 2) removing biological evidence from the studio by cleaning the floors and walls; 3) moving the van at Mr. Mike's house to "cool off" or hide it from the police with the knowledge it had been used in a crime; and 4) abandoning the van in Atlanta, Georgia.
The evidence presented at trial clearly shows the Defendant's participation in conduct intended to hide, remove, and destroy evidence to disrupt the murder investigation. Viewing the testimony presented at trial in the light most favorable to the State, a rational juror could conclude that the Defendant was guilty of conspiracy to obstruct justice.
Excessive Sentences
"The trial judge is afforded wide discretion in determining sentences, and the court of appeal will not set aside a *100 sentence for excessiveness if the record supports the sentence imposed." State v. Williams , 2015-0866, pp. 12-13 (La. App. 4 Cir. 1/20/16), 186 So.3d 242, 250, writ denied , 2016-0332 (La. 3/31/17), 217 So.3d 358.
Both the Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive and cruel punishment. State v. Wilson , 2014-1267, p. 23 (La. App. 4 Cir. 4/29/15), 165 So.3d 1150, 1165. A sentence is excessive, even when it is within the applicable statutory range, if it is " 'grossly disproportionate to the seriousness of the offense or imposes needless and purposeless pain and suffering.' " Id. , 2014-1267, 165 So.3d at 1166 (quoting State v. Hackett , 13-0178, p. 14 (La. App. 4 Cir. 8/21/13), 122 So.3d 1164, 1174 ). In reviewing a sentence for excessiveness, the appellate court must consider the punishment and the crime in light of the harm to society and gauge whether the penalty is so disproportionate as to shock the court's sense of justice. State v. Wilson , 2011-0960, p. 9 (La. App. 4 Cir. 9/5/12), 99 So.3d 1067, 1073. The excessiveness of a sentence is a question of law, and a reviewing court will not set aside a sentence absent a manifest abuse of discretion by the trial court. State v. Alridge, 2017-0231 (La. App. 4 Cir. 5/23/18), 249 So. 3d 260, 287-288, writ denied, 2018-1046 (La. 1/8/19), 259 So. 3d 1021.
The Defendant herein was convicted of one count each of obstruction of justice and conspiracy to obstruct justice by tampering with evidence in a homicide investigation, violations of La. R.S. 14:130.1 and La. R.S. 14:26, respectively. On the obstruction of justice conviction, the Defendant faced a sentencing range of zero to forty years and was sentenced to thirty-five years. The conviction for conspiracy to commit obstruction of justice carries a sentence range of zero to twenty years; the Defendant received fifteen years.
Although the trial judge in this case did not articulate reasons for the sentence, in reviewing a claim that a sentence is excessive, an appellate court generally must determine whether the trial judge has adequately complied with statutory guidelines in La. C.Cr.P. art. 894.1, and whether the sentence is warranted under the facts established by the record. State v. Boudreaux, 2011-1345 (La. App. 4 Cir. 7/25/12), 98 So.3d 881, writ den. 2012-1907 (La. 11/9/12), 100 So.3d 841. The articulation of the factual basis for a sentence is the goal of Article 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, resentencing is unnecessary even when there has not been full compliance with Article 894.1. Id., 2011-1345 p. 5, 98 So.3d at 885. The reviewing court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. La. C.Cr.P. art. 881.4(D) ; State v. Gibson , 2015-1390 (La. App. 4 Cir. 7/6/15), 197 So. 3d 692, 699.
Considering the facts of this case, the Defendant's thirty-five-year sentence is not unconstitutionally excessive. The Josephs suffered cruel, prolonged, and painful deaths by drowning. Their bodies were meticulously bound and weighted and then callously thrown into the Intracoastal Waterway. The Defendant thwarted police investigation in this case and obstructed justice by moving, destroying, and hiding evidence to conceal his and his co-conspirators' participation in the homicides and stymying the missing persons' investigation. Moreover, the record reflects that the Defendant has a lengthy criminal history, which includes convictions for attempted *101 armed robbery and possession with the intent to distribute narcotics.
The record supports the Defendant's sentences.
Conclusion
For the reasons discussed, the Defendant's conviction and sentences are affirmed.
AFFIRMED.

Horatio Johnson and Kenneth Joseph were cousins.

A fifth suspect, Amir "Blue" Ybarra, is a fugitive.

The sentences run concurrently with credit for time served.

"Blue" refers to the fifth suspect in this crime, Amir Ybarra, who remains a fugitive.