STATE OF LOUISIANA     *     NO. 2019-KA-0658

VERSUS     *

ALAN J. BONER, JR.     *

COURT OF APPEAL

FOURTH CIRCUIT

* 

STATE OF LOUISIANA

\* \* \* \* \* \* \*

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 533-216, SECTION "D"
Honorable Paul A Bonin, Judge
\* \* \* \* \* \*
**Judge Joy Cossich Lobrano**
\* \* \* \* \* \*
(Court composed of Judge Roland L. Belsome, Judge Daniel L. Dysart, Judge Joy Cossich Lobrano)

Holli Herrle-Castillo
LOUISIANA APPELLATE PROJECT
P. O. Box 2333
Marrero, LA 70073-2333

      COUNSEL FOR PLAINTIFF/APPELLANT

Leon Cannizzaro
District Attorney
Donna Andrieu
Scott G. Vincent
Assistant District Attorney
DISTRICT ATTORNEY'S OFFICE
ORLEANS PARISH
619 S. White Street
New Orleans, LA 70119

      COUNSEL FOR APPELLEE

        **AFFIRMED IN PART; VACATED IN PART; REMANDED.**

             **JUNE 24, 2020**

*JCL, RLB, DLD*     The defendant, Alan J. Boner, Jr. ("Defendant"), appeals his

convictions of domestic abuse aggravated assault child endangerment and

aggravated assault with a firearm. The crimes were committed against Defendant's

girlfriend ("Victim"). On the night of the incident, March 4, 2017, Victim's

statements to the police on the scene were captured on body-camera video. Victim

recounted that, in the course of an argument, Defendant threatened her with a

firearm. The surveillance video from the home they shared showed that Defendant

slapped Victim three times, retrieved a firearm, placed it on a piece of furniture in

plain view of Victim, and children were present in the home. Although Victim

provided confusing testimony at trial, the jury had sufficient evidence to render its

verdict.

Therefore, after reviewing the appellate record and applicable law, and for

the following reasons, we affirm in part, vacate in part, and remand the case to the

district court.

On March 9, 2017, the State filed a bill of information charging Defendant

with the following incidents occurring on March 4, 2017: (1) domestic abuse

aggravated assault child endangerment under La. R.S. 14:37.7(D);[1] (2) battery

_____

[1] La. R.S. 14:37.7 provides in pertinent part:

1

assault with a firearm under La. R.S. 14:37.4;[2] and (3) misdemeanor domestic

abuse battery under La. R.S. 14:35.3.[3]

Within the same bill, Defendant was charged with second-degree battery

under La. R.S. 14:34.1[4] arising out of an incident that occurred on June 7, 2015.

Victim reported that Defendant had beaten her and remembered waking up in a

hospital but declined to make a police report despite encouragement from hospital

staff.  Body-camera video was recorded at a fire station near the residence shared

by Victim and Defendant and showed Victim with blood on her face and a black

eye.

---

A. Domestic abuse aggravated assault is an assault with a dangerous weapon committed by one household member or family member upon another household member or family member.

* * *

D. This Subsection shall be cited as the "Domestic Abuse Aggravated Assault Child Endangerment Law". When the state proves, in addition to the elements of the crime as set forth in Subsection A of this Section, that a minor child thirteen years of age or younger was present at the residence or any other scene at the time of the commission of the offense, the mandatory minimum sentence imposed by the court shall be two years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.

[2] La. R.S. 14:37.4 provides:

A. Aggravated assault with a firearm is an assault committed with a firearm.

B. For the purposes of this Section, "firearm" is defined as an instrument used in the propulsion of shot, shell, or bullets by the action of gunpowder exploded within it.

[3] La. R.S. 14:35.3 provides:

A. Domestic abuse battery is the intentional use of force or violence committed by one household member or family member upon the person of another household member or family member.

[4] La. R.S. 14:34.1 states:

A. Second degree battery is a battery when the offender intentionally inflicts serious bodily injury[.]

2

At arraignment, Defendant entered not guilty pleas to all of the charged offenses.

Trial by jury began on March 13, 2018 and the State rested its case at the end of the first day of testimony. The district court was to allow Defendant's testimony that evening, but Defendant "absconded" and the district court issued an *alias capias* for his arrest. When Defendant failed to appear the following morning, the trial continued in Defendant's absence and the jury found him guilty of all charges. The jury returned unanimous guilty verdicts for domestic abuse aggravated assault child endangerment and second-degree battery. However, the jury returned a non-unanimous verdict (11-1) for the charge of aggravated assault with a firearm. After a bench trial, the district court found Defendant guilty of misdemeanor domestic abuse battery. Defendant appealed neither his conviction of second-degree battery nor his misdemeanor domestic abuse battery.

The district court denied Defendant's motion for new trial. Defendant was sentenced to serve: (1) five years in the custody of the Louisiana Department of Corrections ("DOC") for domestic abuse aggravated assault child endangerment; (2) five years in the custody of DOC for aggravated assault with a firearm; (3) two years in the custody of DOC for second-degree battery; and (4) six months in the custody of the Sheriff for the Parish of Orleans for misdemeanor domestic abuse battery. Defendant received credit for time served, with all sentences to run concurrently. No sentence was suspended nor any probation ordered.

**TRIAL TESTIMONY**

The State presented four witnesses, Victim's stepmother ("Stepmother"), Sergeant Matthew Morrison of the New Orleans Police Department ("NOPD"), Victim, and Jim Huey with the Communications Department of the Sheriff for the Parish of Orleans. The Defendant presented no witness in his defense.

On the evening of March 4, 2017, NOPD officers arrived at the residence shared by Defendant and Victim after receiving a 9-1-1 call from Stepmother. Stepmother told police that Victim contacted her asking her to call the police and pick her up, stating Defendant had beaten her in front of the children. Stepmother reported that children were in the home along with several firearms. Stepmother and Victim's father ("Father") drove to Victim's home, but did not enter the residence. Once the police arrived, Stepmother and Father returned to their home.

NOPD Sgt. Morrison was one of the first officers at the scene. He had responded to domestic violence calls on almost a nightly basis during his ten years on the force. After knocking on the door of the home, he heard people inside but Defendant did not immediately open the door. The officers then separated Victim from Defendant, in part because Stepmother said guns were in the house.

Upon entering the residence, police confiscated a .357 magnum, a shotgun, and a video-surveillance system. Sgt. Morrison interviewed Victim who was initially cooperative, however, later "shut down." Victim repeatedly said that everything was her fault, which Sgt. Morrison explained, "is pretty typical in a domestic violence dispute."

Sgt. Morrison testified that Victim displayed no visible injuries. However, Victim pointed to various scars on her face that were cause by previous actions by Defendant during an incident in 2015. The house's interior did not indicate that any violence had occurred. However, Sgt. Morrison confirmed that that two young boys, ages eight and nine, as well as an infant, were present on the scene.

Victim and Defendant had been together for over three years at the time of trial and had one child. Victim lived with Defendant on June 7, 2015 and March 4, 2017.

At trial, Victim initially denied much of what she told police on the evening of March 4, 2017. Upon seeing the silent surveillance video, she remembered Defendant slapping her and telling the officers that Defendant was "crazy." She also stated that the incident was her fault because she was being "crazy." The surveillance video showed Defendant slapping Victim three times on her face; he then took a gun from a dresser drawer and placed it on a nearby ottoman. Later, Defendant picked up the gun and a young boy is seen running away while Defendant retrieved the weapon from his pants and placed it back in the drawer.

Victim watched the body-camera videos played for the jury. In one, Victim explained that an argument ensued after her sons' father dropped them off to attend a funeral. Defendant then threatened her with a .357 magnum. Victim told police, "He was threatening me with this stupid. . . .357, and. . . . he keeps pulling this . . . gun out on me."

5

Victim admitted on the body-camera video to texting Stepmother on March 4, 2017, stating Defendant had threatened to kill her. Victim told police Defendant threatened to kill her "all the time" and that he "scares her" with the gun. She was concerned with Defendant's possible quick release from jail. However, Victim repeatedly claimed that the incident was her fault and she never should have "opened her mouth" to her parents.

Finally, the State played Jail Call 4 in which Defendant told Victim that she had "thrown him under the bus." She replied that she never wanted "this" to happen and asked Defendant what statement to retract to get him out of jail. Victim denied making this statement during her testimony.

Victim could not remember many of the events that took place on March 4, 2017, but knew her children were in the house. She was also uncertain if Defendant was even at home during the time in question. When asked whether she remembered being afraid of Defendant that night, Victim responded, "I don't know." She stated that she did presently fear Defendant or fear having her children around him.

Jim Huey was custodian of records of all recorded inmate calls made at the Orleans Parish Jail. He authenticated the telephone calls played for the jury. In Jail Call 2, Defendant asked Victim what she was going to do to "fix this." Victim agreed to do anything she had to do to expedite his release from jail. In Jail Call 5 with his father, Defendant admitted that he "poked" Victim in the head on the night at issue. Finally, in Jail Call 6, Defendant admitted to his father that, on the night in

question, Father and Stepmother were outside taking pictures of his vehicle and house, at which time, he "pulled out" his gun and threatened to "shoot them up" if they tampered with any of his property.

## ERRORS PATENT

A review of the record reveals no error patent that requires action by this court.[5]

## DISCUSSION

Defendant has assigned the following three errors for review:

1. The evidence was insufficient to uphold defendant's convictions for aggravated assault with a firearm and domestic abuse aggravated assault with a dangerous weapon with child endangerment.

2. The trial court erred in failing to grant defendant's motion to continue the trial.

3. The 11 to 1 jury verdict on the charge of aggravated assault with a firearm was unconstitutional.

*Assignment of Error Number 3*

In his third assignment of error, Defendant contends that his conviction for aggravated assault with a firearm by a non-unanimous vote of 11-1 is unconstitutional. This assignment of error has merit.

On April 20, 2020, in *Ramos v. Louisiana,* --- U.S. ---, 140 S.Ct. 1390, 1397, --- L.Ed.2d --- (2020), the United States Supreme Court held that jury

---

[5] An patent error arguably occurred during sentencing. With respect to Defendant's conviction on the charge of domestic abuse aggravated assault child endangerment, the district court rendered a sentence of "five years in the custody of the Department of Corrections, credit for all time served." The pertinent statute, La. R.S. 14:37.7(D), provides that "the mandatory minimum sentence imposed by the court shall be two years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence." The court's imposition of a five-year sentence satisfies the mandatory minimum parole ineligible two years required by the sentencing statute. Thus, this court need not correct the sentence.

verdicts in state felony trials must be unanimous. As we recently stated in *State v. Myles,* 19-0965 (La.App. 4 Cir. 4/29/20), ---So.3d ---, 2020 WL 2069885 in a review of an assignment of error: "Because Mr. Myles' case is pending on direct review, the Court's decision in *Ramos* applies here."

Therefore, we vacate Defendant's conviction and sentence for aggravated assault with a firearm and remand to the district court.[6]

*Assignment of Error Number 1*

Defendant argues that insufficient evidence exists to support his conviction for domestic abuse aggravated assault child endangerment. He contends "no evidence was presented of any attempt to use force or violence upon [Victim] with a firearm, nor was any evidence presented that a firearm was used to place [Victim] in reasonable apprehension of receiving a battery." Consequently, Defendant asserts that no reasonable juror could have found beyond a reasonable doubt that he "used the firearm to threaten [Victim]."

When reviewing the sufficiency of the evidence to support a conviction, we apply the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under *Jackson*, an appellate court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense proven

---

[6] Because we vacate and set aside Defendant's conviction for aggravated assault with a firearm (La. R.S. 14:37.4) pursuant to *Ramos,* Defendant's assignment of error that the evidence was insufficient to convict him of aggravated assault with a firearm is rendered moot. *See State v. Hunter,* 19-0901 (La.App. 4 Cir. 5/27/20), --- So.3d---, 2020 WL 2751914 *3 (Jenkins, J., Bartholomew-Woods, J., concurring) ("But, in light of the fact that the defendant's conviction must been vacated and set aside on that first assigned error, I find that all other assignments of error, including the sufficiency of evidence, are rendered moot.")

beyond a reasonable doubt. *State v. Williams,* 18-0445, p. 11 (La. 2/27/19), 265 So.3d 902, 912, *affirmed,* 19-0490 (La. 4/3/20), --- So.3d ---, 2020 WL 1671569. The reviewing court must consider the whole record, just as the rational trier of fact considers all of the evidence, while presuming that the trier of fact acted rationally. *State v. Mussall*, 523 So.2d 1305, 1310 (La. 1988); *State v. Dukes,* 19-0172, pp. 7-8 (La.App. 4 Cir. 10/2/19), 281 So.3d 745, 752.

"If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted." *State v. Landrieu,* 18-0964, p. 6 (La.App. 4 Cir. 6/12/19), 274 So.3d 661, 667, *writ denied,* 19-1148 (La. 5/9/20), --- So.3d ---, 2020 WL 2316688 (quoting *State v. Egana*, 97-0318, p. 6 (La.App. 4 Cir. 12/3/97), 703 So.2d 223, 228). It is not the function of an appellate court to assess the credibility of witnesses or reweigh the evidence. *State v. Scott*, 12-1603, p. 11 (La.App. 4 Cir. 12/23/13), 131 So.3d 501, 508. Credibility determinations, as well as the weight given to the evidence, are soundly within the province of the factfinder. *Id.* "Moreover, conflicting testimony as to factual matters is a question of weight of the evidence, not sufficiency. Such a determination rests solely with the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness." *Id.* In the absence of internal contradiction or irreconcilable conflict with the physical evidence, a single witness's testimony, if believed by the fact finder, is sufficient to support a factual conclusion." *State v. D.D.,* 18-0891, p. 28, n. 24

(La.App. 4 Cir. 12/27/19, 288 So.3d 808, 833 (citing *State v. Marshall*, 04-3139, p. 7 (La. 11/29/06), 943 So.2d 362, 368).

Defendant challenges his conviction for domestic abuse aggravated assault child endangerment. As required by La. R.S. 14:37.7(D), the State proved that children, thirteen years of age or younger, were present at the residence on that night through Sgt. Morrison's testimony, the surveillance video, and Victim's statements at trial.[7] The issue then is whether Defendant committed an aggravated assault with a dangerous weapon, thereby fulfilling the requirements of La. R.S. 14:37.7(A).

An assault is "an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery." La. R.S. 14:36.[8] "In order to support a conviction for assault, the State must prove beyond a reasonable doubt: (1) the intent-to-scare mental element (general intent); (2) conduct by defendant of the sort to arouse a reasonable apprehension of bodily harm; and (3) the resulting apprehension on the part of the victim." *State v. Brown,* 17-0124, p. 6 (La.App. 4 Cir. 12/12/17), 234 So.3d 978, 982, *writ denied,* 18-0010 (La. 6/15/18, 249 So.3d 978 (additional citations omitted). Mere words do not constitute an assault. *Muslow v. A.G. Edwards & Sons, Inc.*, 509 So.2d 1012, 1020 (La.App. 2nd

---

[7] La. R.S. 14:37.7(D) states:

> When the State proves that a minor child thirteen years of age or younger was present at the residence or any other scene at the time of the commission of the offense, the mandatory minimum sentence imposed by the court shall be two years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.

[8] A battery is the "the intentional use of force or violence upon the person of another." La. R.S. 14:33.

Cir.1987). Yet, a combination of threats, present ability to carry out the threats and reasonable apprehension of harmful or offensive contact may suffice. *Id.* "So long as the weapon was used by the [defendant] in such a way as to excite fear and apprehension in [the victims], it is considered a dangerous weapon under the law." *State in Interest of C.B.*, 52,245, p. 9 (La.App. 2 Cir. 6/27/18), 251 So.3d 562, 568.

The *Brown* Court stated:

> Assault requires proof of only general criminal intent or a showing that the Defendant, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act. La. R.S. 14:10(2); *State v. Hill*, 35,013, pp. 5-6 (La.App. 2 Cir. 9/26/01), 796 So.2d 127, 131-32; *State v. Johnston*, 207 La. 161, 20 So.2d 741, 744-45 (1944). "An offender has the requisite intent when the prohibited result may have reasonably been expected to follow from the offender's voluntary act, regardless of any subjective desire on his part to have accomplished the result." [*State v.*] *De Gruy*, 16-0891, p. 13 [La.App. 4 Cir. 4/5/17], 215 So.3d [723] at 730, *quoting State v. Amos*, 15-0954, p. 11 (La.App. 4 Cir. 4/6/16), 192 So.3d 822, 829.

*Id.,* 17-0124, pp. 6-7, 234 So.3d at 982.

The surveillance video supports all the required elements of this crime. The jury saw Defendant slapping Victim followed by the retrieval of a firearm placed in full view of Victim. On the body-camera video, Victim tells police that Defendant threatened her with a .357 magnum. Finally, in Jail Call 6 to his father, Defendant admitted his reckless intent when he retrieved the firearm, stating he was angry that Victim's family was outside and threated to "shoot them up." All this evidence was sufficient for the jury to find that Defendant had the general intent to scare Victim with a firearm, his conduct was the sort to arouse a

reasonable apprehension of bodily harm, and, as admitted to by Victim, she felt threatened and scared by his use of the firearm.

Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could find Defendant committed domestic abuse aggravated assault child endangerment. Therefore, Defendant's assignment of error lacks merit.

*Assignment of Error Number 2*

Defendant next complains that the Jail Calls were provided to defense counsel the night before trial, the surveillance video at 3:00 p.m. the day before trial, and body-camera footage the weekend before trial. On the morning of trial, Defendant moved for a continuance, arguing that he was prejudiced by the late turnover of these materials. The district court denied Defendant's motion, which he claims requires reversal of his conviction.

"A trial court's 'decision to grant or refuse a motion for a continuance rests within the sound discretion of the trial judge, and a reviewing court will not disturb such determination absent a clear abuse of discretion.'" *State v. Mark*, 13-1110, p. 13 (La.App. 4 Cir. 7/30/14), 146 So.3d 886, 897. A defendant's argument does not warrant reversal of his convictions absent a showing of prejudice. *State v. Sanders*, 93-0001, p. 9 (La. 11/30/94), 648 So.2d 1272, 1281. Not every violation of pretrial procedure requires reversal; before a defendant can complain of a violation, he must show prejudice. *State v. Piper,* 18-1796, p. 5 (La.App. 5 Cir. 9/27/19), 287 So.3d 13, 19.

Defendant's main claim of prejudice stems from the late submission of "a police report from EMS" which served to support the second-degree battery charge lodged against Defendant. According to defense counsel, he was precluded from obtaining evidence to corroborate or oppose allegations in the report. However, because the report was not admitted into evidence, Defendant suffered no prejudice from its late submission.

Defendant also complains that certain body-camera footage contained exculpatory information. However, the body-camera footage was only allegedly exculpatory vis-à-vis the EMS report. Again, the EMS report was not introduced into evidence, so an alleged exculpatory nature of the footage did not materialize. Therefore, no prejudice existed.

Defendant was a party to the Jail Calls and knew surveillance cameras were in the home. Further, Sgt. Morrison, whose body-camera footage was admitted into evidence, testified at trial. Defense counsel had the opportunity to cross-examine Sgt. Morrison with respect to the video or any other aspect of Defendant's behavior on the night at issue. The transcript reflects that defense counsel availed himself of the opportunity. Therefore, this assignment of error is meritless.

**CONCLUSION**

For the reasons above, we affirm Defendant's conviction for domestic abuse aggravated assault child endangerment and vacate his conviction and sentence for aggravated assault with a firearm. The case is remanded to the district court.

**AFFIRMED IN PART; VACATED IN PART; REMANDED.**