CHARLES R. JONES, Judge.
| ,The appellant, G.B.[1], a juvenile, appeals his conviction and sentence for the offense of attempted second degree murder. We vacate the conviction and sentence and remand this matter for a new trial.
On or about the evening of July 13, 2007, G.B. was lounging with his Mend, C.L. (a.k.a. “Buddy”), and C.L.’s cousin, Ronald, at C.L.’s home. The three (3) boys decided to walk to a nearby store located at the intersection of Touro and N. Derbigny Streets. While in route, the three (3) boys met with C.L.’s younger brother, A.L. (a.k.a. “Nald”), and A.L.’s Mend “Rocky,” whose real name is unknown. What transpired thereafter is in dispute.
C.L. testified that A.L. informed the group of boys that he was about to fight a minor named T.H. T.H. had been in an argument earlier in the day with a Mend of AL.’s whose name is Josh. A.L. did not advise C.L., G.B. or Ronald that he was armed. C.L. testified that he, Ronald and G.B. accompanied A.L. and Rocky to find T.H. to have a fist fight.
|gThe group of five (5) boys approached T.H., who was walking with another minor, R.R. A few words were exchanged between A.L. and T.H. C.L. testified that a fist fight began between R.R. and Rocky. While Rocky and R.R. were fighting, T.H. simultaneously began walking away and calling for his Mend “Lil’ Chris,” who lived nearby, to assist him in the fight. Allegedly, A.L. pulled out a gun, and shot T.H. multiple times in the back of the head. A.L. then shot R.R. twice, according to C.L.’s testimony. A.L., C.L., Rocky, Ronald and G.B. fled the scene and ran to the home of A.L. and C.L. Lastly, C.L. further testified that it was at his home that C.L. saw his brother with a gun and realized that A.L. was the shooter.
Nevertheless, according to the testimony of victim R.R., C.L. and T.H. had argued earlier in the day on or about July 13, 2007, and were on the verge of fighting, but did not actually have a fight. R.R. testified that he witnessed the argument. R.R. further testified that later the same day he and T.H. were approached by A.L., C.L., G.B. and two other boys while leaving a neighborhood store. C.L. asked T.H., “[wjhat’s up now,” to which T.H. responded that everything was “cool” between them. As T.H. fled the scene and proceeded to call out for his Mend Lil’ Chris to assist him, R.R. testified that C.L. pulled a gun out and shot T.H. in the back of the head. C.L. then shot R.R. twice. R.R. testified that throughout this encounter G.B. and the other boys watched the incident and did nothing. All the boys fled the scene together after the shooting occurred.
Detective Orlando Matthews testified that G.B. admitted to him at the police station that he was present at the shooting scene to engage in a “fistic encounter” with the two victims.
|SG.B. was arrested and charged with two counts of attempted first degree murder of victims T.H. and R.R. At a probable cause hearing, the juvenile court found no probable cause for attempted first degree murder, but found probable cause for one count of simple battery, to which G.B. pled not guilty. At trial, G.B. was found guilty of attempted second degree murder and was sentenced to juvenile life.
G.B. raises one issue on appeal. He contends that the district court erred in finding him guilty of attempted second degree murder because insufficient evidence was adduced at trial to convict him of this crime.
*830 The standard of review for determining the sufficiency of evidence is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Spears, 05-964 (La.4/4/06), 929 So.2d 1219, 1222. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Gibson, 43,146, p. 4 (La.App. 2 Cir. 3/19/08), 978 So.2d 1218 (citing State v. Pigford, 05-0477 (La.02/22/06), 922 So.2d 517; State v. Robertson, 96-1048 (La.10/04/96), 680 So.2d 1165). Lastly, appellate courts do not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442, 443.
G.B. contends that no evidence was introduced at trial regarding his mental state or his intentions on the night of the shooting. He further avers that to find him guilty of attempted murder as a principal violates the letter and spirit of Jackson v. Virginia because no evidence was introduced to intimate that the defendant participated in the planning or execution of the crime. He maintains that the only evidence of his involvement in this attack was his presence at the incident.
G.B. further avers that there is no allegation that he had a weapon and he did not have any personal animosity toward either of the victims as he had not been involved in the fight between the victims and A.L. and C.L. He contends that there is no physical evidence implicating him in any crime and the only victim who testified, R.R., did not describe what involvement, if any, G.B. had in the shooting.
G.B. alleges that his conviction is based on the juvenile court’s determination that he was a principal because of his friendship with A.L. and C.L., and because A.L. testified that G.B. was present at the scene.
The fact that G.B. was not the shooter is not disputed. Thus, we must consider whether the record below establishes that G.B. was a principal to the attack on the victims.
The Louisiana Supreme Court explained the requisites of a conviction of attempted second degree murder as follows:
[t]o sustain a conviction for attempted second degree murder, the state must prove that the defendant: (1) intended to kill the victim; and (2) committed an overt act tending toward the accomplishment of the victim’s death. La. R.S. 14:27; 14:30.1. Although the statute for the completed crime of second degree murder allows for a conviction based on “specific intent to kill or to inflict great bodily harm,” La. R.S. 14:30.1, attempted second degree murder requires specific intent to kill. State v. Huizar, 414 So.2d 741 (La.1982). Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant.
State v. Bishop, 01-2548, p. 4 (La.1/14/03), 835 So.2d 434, 437. See also La. R.S. 14:10(1); State v. Butler, 322 So.2d 189 (La.1975); State v. Martin, 92-0811 (La.App. 5 Cir. 5/31/94), 638 So.2d 411.
In State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78, the Louisiana Supreme Court set forth the law of principals:
All persons can be convicted as a principal to a crime if he is “concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or direct *831 ly or indirectly counsel or procure another to commit the crime.” La.Rev. Stat. § 14:24. Not all principals are automatically guilty of the same grade of offense as the main offender because the mental state of the offenders may be different. State v. Brooks, 505 So.2d 714(La.), cert. denied, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987). Thus, “an individual may only be convicted as a principal for those crimes which he personally has the requisite mental state.” Id. The intent of the accomplice cannot be inferred to the accused. State v. Holmes, 388 So.2d 722 (La.1980).
Specific intent is “that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.” La.Rev. Stat. § 14:10(1). Because specific intent is a state of mind, it need not be proven as a fact but may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Graham, 420 So.2d 1126 (La.1982).
Id., 99-3342, pp. 5-6; 772 So.2d at 82.
Not all principals are automatically guilty of the same grade of offense as the main offender because the mental state of the offenders may be different. State v. Runyon, 2005-36, p. 17 (La.App. 3 Cir. 11/2/05), 916 So.2d 407, 420 (citing State v. Brooks, 505 So.2d 714 (La.1987), cert. denied, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987)). Thus, “an individual may only be convicted as a principal for those crimes which he personally has the requisite mental state.” Id. The intent of the accomplice cannot be inferred to the accused. Id. (citing State v. Holmes, 388 So.2d 722 (La.1980)).
Furthermore, the Louisiana Supreme Court has held that more than mere presence and subsequent flight from the scene is required to be found guilty as a principal in murder cases requiring specific intent. State v. Wright, 2001-0322, p. 9 (La.12/4/02), 834 So.2d 974, 983. In reaching this holding, the Supreme Court cited the following opinions as examples of murder cases where defendants were found guilty as principals:
State v. Brooks, supra [505 So.2d 714, 717 (La.1987), cert. denied, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987) ] (defendant facilitated rape and murder by holding victim while co-defendant undressed him, defendant also gagged boy and took him to the murder site, defendant’s presence and assistance allowed jurors to conclude he acquiesced in the use of deadly force); State v. Holmes, 388 So.2d 722 (La.1980) (defendant convicted of first degree murder committed during armed robbery when accomplice shot victim because evidence showed defendant helped plan robbery, obtained shotgun, disarmed security guard, and threatened to kill customers, all showing his intent to use deadly force in effectuating the robbery); State v. Sonnier, 380 So.2d 1 (La.1979) (Court affirmed first degree murder conviction as principal when defendant and his brother came upon a couple and his brother handcuffed the couple; then both men raped the girl and his brother shot the couple while the defendant held the flashlight on them).

Id.

In the case sub judice, the juvenile court explained at trial that G.B.,
... had the specific intent to kill or inflict great bodily harm upon the victim, T.H. The juvenile may not have initially been aware of the presence of the second victim, R.R. The juvenile went in search of the intended victim while his accomplices were in possession of a firearm. Upon locating the intended victim and the second victim, the *832 juvenile participated in the altercation, did nothing to prevent the attempted killings, and assisted in efforts to hide the facts of the case. In his presence, without provocation, deadly force was used to inflict great bodily harm upon the victims.
|7However, as the Supreme Court noted in State v. Bishop, supra, the state must prove that the defendant had specific intent to kill the victim in order for the defendant to be convicted for attempted second degree murder. Thus, the juvenile court’s discussion of G.B.’s intent to “inflict great bodily harm” is not germane to a conviction for attempted second degree murder. Moreover, there was no testimony presented which showed that G.B. fought anyone at the crime scene or committed any act in furtherance of this crime. His presence at and flight from the scene is not enough to have found him guilty of attempted second degree murder pursuant to State v. Wright, supra.
Viewing the evidence in a light most favorable to the prosecution, we do not find that a rational trier of fact could have found that the elements of attempted second degree murder were proven beyond a reasonable doubt. This assignment of error has merit.
DECREE
For the foregoing reasons, the judgment of the juvenile court convicting G.B. of two counts of attempted second degree murder, and sentencing him to juvenile life is vacated and this matter is hereby remanded to the district court for a new trial.
VACATED AND REMANDED.

. This Court’s policy is not to use the names of minors so as to maintain their identities.