STATE OF LOUISIANA IN       *       NO. 2022-CA-0277
THE INTEREST OF R.B.

      *

      COURT OF APPEAL

      *

      FOURTH CIRCUIT

      *

      STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
JUVENILE COURT ORLEANS PARISH
NO. 2022-010-01-DQ-C, SECTION "C"
Honorable Candice Bates Anderson, Judge
* * * * * *
**Judge Paula A. Brown**
* * * * * *

(Court composed of Judge Joy Cossich Lobrano, Judge Paula A. Brown, Judge
Dale N. Atkins)

**LOBRANO, J., CONCURS AND ASSIGNS REASONS**

Katherine M. Franks
LOUISIANA APPELLATE PROJECT
P.O. Box 220
Madisonville, LA 70447

      COUNSEL FOR DEFENDANT/APPELLANT


Jason Rogers Williams
District Attorney
Brad Scott
Chief of Appeals
Victoria J. Cvitanovic
Assistant District Attorney
ORLEANS PARISH DISTRICT ATTORNEY'S OFFICE
619 S. White Street
New Orleans, LA 70119

      COUNSEL FOR THE STATE/APPELLEE

               **AFFIRMED IN PART;
REVERSED IN PART;
AND REMANDED
WITH INSTRUCTIONS
AUGUST 26, 2022**

This is a juvenile delinquency appeal.  The juvenile, R.B.,[1] was charged by a

delinquency petition with one count of principal to attempted second degree

murder, one count of aggravated second degree battery, one count of armed

robbery, one count of unauthorized use of a motor vehicle and one count of illegal

carrying of weapons.  Following the adjudication hearing, the juvenile court found

R.B. delinquent of one count of principal to attempted second degree murder, one

count of principal to aggravated second degree battery, one count of principal to

armed robbery, one count of unauthorized use of a motor vehicle and one count of

illegal carrying of weapons.   At the disposition hearing, the juvenile court

sentenced R.B. to juvenile life for principal to second degree murder, aggravated

second degree battery and principal to armed robbery, two years for unauthorized

use of a motor vehicle, and six months for illegal carrying of weapons.  The signed

written judgment issued the same day erroneously reflected that R.B. was

---

[1] In accordance with Rules 5-1 and 5-2, Uniform Rules, Courts of Appeal, initials are used throughout this opinion to protect the juvenile's identity. *See e.g., State in Interest of K.D.*, 2013-1274, p. 1 (La. App. 4 Cir. 4/9/14), 140 So.3d 182, 183 n.1.

1

adjudicated delinquent of illegal possession of a handgun by a juvenile and principal to "2 counts" of armed robbery. For the reasons that follow, we affirm R.B.'s delinquency adjudication of principal to armed robbery, we reverse R.B.'s delinquency adjudication of principal to attempted second degree murder and principal to aggravated second degree battery, and we remand this matter to the juvenile court with instructions to correct the written judgment to properly reflect the offenses for which R.B. was adjudicated and sentenced in the transcript.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 27, 2022, the State filed a delinquency petition (the "Petition") in the Juvenile Court for the Parish of Orleans, charging seventeen-year-old R.B. with one count of principal to attempted second degree murder, a violation of La. R.S. 14:(27)30.1, one count of aggravated second degree battery, a violation of La. R.S. 14:34.7, one count of armed robbery, a violation of La. R.S. 14:64, one count of unauthorized use of a motor vehicle, a violation of La. R.S. 14:68.4, and one count of illegal carrying of [weapons], a violation of La. R.S. 14:95(A).[2] In the

_____

[2] Specifically, the State charged R.B. as following:

COUNT 1: LA R.S. 14:(27) 30.1 . . . relative to ATTEMPTED SECOND DEGREE MURDER, to wit: attempted killing of [Ms. Mantle] where there was a specific intent to kill or inflict great bodily harm and while the perpetrator was engaged in the attempted armed robbery of a white Mercedes Benz car in the possession of [Ms. Mantle], on January 6, 2022, at approximately 8:00 P.M. at the 2400 block of Jena Street, in the Parish of Orleans.

COUNT 2: LA. R.S. 14:34.7 relative to AGGRAVATED SECOND DEGREE BATTERY, to wit: a battery against [Ms. Mantle] committed with a dangerous weapon when the offender intentionally inflicts great bodily harm, on January 6, 2022[,] at approximately 8:00 P.M. at the 2400 block of Jena Street, in the Parish of Orleans.

COUNT 3: LA R.S. 14:64 relative to ARMED ROBBERY, to wit: taking gray Lexus keys and cellphone in the possession of [Mr. Crafton], from the victim's person or in his/her immediate control, by use of force or intimidation, while

2

Petition, the State alleged that R.B., and three other juveniles – J.K., D.D. and K.C. – participated in a crime spree that involved four victims and spanned over a two-week period. The State contended that the crimes began on December 26, 2021, when a vehicle owned by Victim 1, Mr. Rumsey, was stolen from his home and later used as a getaway vehicle on January 6, 2022, during the armed robbery of Victim 2, Mr. Crafton, and the attempted second degree murder and aggravated second degree battery of Victim 3, Ms. Mantle, approximately twenty-four minutes later. When R.B. was arrested the next day, he was carrying a weapon and he had Mr. Rumsey's key. R.B. answered the Petition with a plea of not guilty on all counts.[3]

On March 14, 2022, R.B. filed a motion to quash the Petition in the juvenile court. In the motion to quash, R.B. argued that his charges were unconstitutional

---

armed with a firearm, a dangerous weapon, on January 6, 2022, at approximately 8:00 P.M. at the 5900 block of Constance Street, in the Parish of Orleans.

COUNT 4: LA R.S. 14:68.4 relative to UNAUTHORIZED USE OF A MOTOR VEHICLE, to wit: the intentional taking or use of a gray 2015 Jeep Grand Cherokee belonging to [Mr. Rumsey], either without the owner's consent or by means of fraudulent practice or representations, but without any intent to permanently deprive, between January 6, 2022[,] at 7:30 [P.M.] and January 7, 2022[,] at 9:30 [A.M.] on or around the 2400 block of Jena Street, the 5900 block of Constance Street and/or the 3400 block of Pauger Street, in the Parish of Orleans.

. . . .

COUNT 6: LA R.S. 14:95(A) relative to ILLEGAL CARRYING OF [WEAPONS], to wit: the intentional concealment of a firearm on one's person, on January 7, 2022 at approximately 9:45 [A.M.] at Allen and Rocheblave Streets, in the Parish of Orleans.

The State also alleged additional charges in the Petition stemming from the crime spree that were not applicable to R.B.: COUNT 5 relative to the intentional possession of a handgun on January 7, 2022, when the offender has not yet attained the age of 18, a violation of La. R.S. 14:95.8; COUNT 7 relative to the armed robbery of Mr. Estrella on January 3, 2022, a violation of La. R.S. 14:64; and COUNT 8 relative to the attempted second degree murder of Ms. Mantle on January 6, 2022, a violation of La. R.S. 14:(27) 30.1.

[3] Juveniles R.B and J.K. were tried together. D.D. and K.C. answered with guilty pleas to their charges.

3

because the attempted second degree murder and aggravated second degree battery charges are a violation of the double jeopardy clause of both the United States Constitution and the Louisiana Constitution. The juvenile court did not schedule the motion to quash for hearing or hear any arguments in connection with the motion to quash.

On March 21, 2022, the State amended count one of the Petition, charging R.B. with principal to attempted second degree murder, a violation of 14:(24)(27)30.1. The State did not amend any other portions of the Petition. Shortly afterward, on March 25, 2022, the adjudication hearing commenced.[4]

*Adjudication Hearing Testimony*

Mr. Rumsey testified that on December 26, 2021, his 2015 gray Jeep Grand Cherokee (the "Jeep") was stolen out of his driveway. Mr. Rumsey acknowledged that he reported his Jeep stolen but testified that he did not know which perpetrator stole his vehicle. Mr. Rumsey was also unable to make an in-court identification of R.B. but testified that he had not given anyone, including R.B., consent to occupy his vehicle.[5]

Mr. Crafton testified that on the evening of January 6, 2022, at approximately 7:30 p.m., while sitting in his parked black Lexus in the 5900 block of Constance Street, an SUV (later identified as Mr. Rumsey's Jeep) drove up and

---

[4] This is the second appeal before this Court arising out of the crime spree. The first appeal, *State in Interest of J.K.*, 2022-0308, p. 1 (La. App. 4 Cir. 7/13/2022), ___So.3d___, 2022 WL 2712521, at *1, involved R.B.'s co-defendant J.K. In that case, this Court affirmed the juvenile court's judgment, which adjudicated J.K. delinquent on one count of attempted murder against Ms. Mantle, one count of aggravated second degree battery against Ms. Mantle, one count of armed robbery against Mr. Crafton, one count of armed robbery against Mr. Estrella and one count of unauthorized use of a motor vehicle against Mr. Rumsey.

[5] The State did not charge R.B. or any of his alleged accomplices with the December 26, 2021 theft of Mr. Rumsey's Jeep.

parked next to his vehicle.[6] Two females, one who was later identified as J.K., exited the Jeep and surrounded Mr. Crafton's vehicle. Mr. Crafton said that he immediately exited his vehicle, at which time J.K. and her female accomplice placed their guns to his head and stomach and demanded his possessions. Mr. Crafton said he surrendered his car key and cellphone to them. He then hid behind a gate, waiting for J.K. and her female accomplice to leave in his vehicle. Mr. Crafton relayed that after they failed to start his vehicle, a short-statured black male wearing a gray hooded sweatshirt exited the Jeep and also attempted to start his vehicle, but the male was unable to get the vehicle to start. The three perpetrators ran back to the Jeep and drove away. Mr. Crafton reported the crime to the New Orleans Police Department ("NOPD").

NOPD Officer Jack Wilson ("Ofc. Wilson") testified that he was involved in the investigation of the armed robbery of Mr. Crafton. As a part of his investigation, Ofc. Wilson canvassed the area where the crime occurred and secured video footage of Constance Street (the "Constance Street footage"), together with a pair of Nike flip-flops left on the floorboard inside Mr. Crafton's vehicle[7] and Mr. Crafton's car key.

NOPD Detective Timothy Jones ("Det. T. Jones") testified that he was assigned to investigate Mr. Crafton's armed robbery. As part of his investigation, he reviewed the Constance Street footage that captured the crime. Det. T. Jones confirmed the Constance Street footage showed the perpetrators arriving and

---

[6] Although Mr. Crafton testified the vehicle that pulled alongside him was an SUV, the surveillance footage presented by the State revealed that the SUV was actually a Jeep. For clarity, we will refer to the SUV as the Jeep throughout Mr. Crafton's testimony.

[7] This Court in *State in Interest of J.K.*, 2022-0308, pp. 12-13, ___So.3d___, ___, 2022 WL 2712521, at *6, concluded that the State's evidence was sufficient to show the flip-flops found in Mr. Crafton's vehicle belonged to R.B.'s co-defendant, J.K.

leaving in Mr. Rumsey's Jeep. Det. T. Jones recounted that after stopping alongside Mr. Crafton's vehicle two individuals exited the Jeep and surrounded Mr. Crafton's vehicle. One of these two individuals was a short-statured male wearing a gray sweatshirt, stonewash jeans and a white glove and carrying a short-barreled rifle.[8] The two individuals immediately went back to the Jeep and moved it a short distance into a parking spot on the left-hand side of the street. After the Jeep was parked, J.K. and her female accomplice exited the Jeep and surrounded Mr. Crafton's vehicle, robbed Mr. Crafton at gunpoint, then stole his car key and cellphone. The Constance Street footage showed J.K. and her female accomplice entering Mr. Crafton's vehicle in an attempt to start the vehicle. Shortly afterwards, the short-statured male reappeared after exiting the Jeep, entered Mr. Crafton's vehicle and also attempted to start it. After Mr. Crafton's vehicle failed to start, all three perpetrators ran back to the Jeep and drove away.

Ms. Mantle testified that on the evening of January 6, 2022, she was sitting in her vehicle near the intersection of Freret and Jena Streets when two females, one later identified as J.K., approached her car. One of the females knocked on Ms. Mantle's driver-side window, brandishing a gun in her right hand, while the other female attempted to open the passenger door. Ms. Mantle panicked and sped away. J.K. and her female accomplice fired gunshots into Ms. Mantle's vehicle as Ms. Mantle attempted to flee. One of the bullets grazed Ms. Mantle's arm and another bullet penetrated the driver's seat headrest.[9] Ms. Mantle sustained a gunshot wound to her right triceps and a large contusion injury to the right side of

---

[8] The State offered, filed and introduced into evidence the Constance Street footage, R.B.'s clothing with the white glove, and the short-barreled rifle.

[9] The State offered, filed and introduced into evidence photos that depicted bullet holes in the glovebox and driver's seat headrest, along with three shattered windows of Ms. Mantle's vehicle.

her abdomen.  Ballistics evidence revealed two separate firearms were used in the shooting.

Det. T. Jones testified that he was also investigating the shooting incident involving Ms. Mantle which occurred on January 6, 2022.  In carrying out that investigation, he reviewed surveillance video footage of Jena Street (the "Jena Street footage") near the location where shots were fired at Ms. Mantle's vehicle.[10] According to Det. T. Jones, he identified J.K. and her female accomplice as the perpetrators approaching Ms. Mantle's vehicle with firearms. He noticed that the Jeep was present in both the Constance and Jena Streets footage, leading him to believe that the same perpetrators were involved in committing both crimes. Because the Jeep had previously been reported stolen, Det. T. Jones attempted to track its location by Sirius XM radio technology, but was notified by another NOPD officer that the Jeep was seen near an apartment, surrounded by four individuals.  The Jeep was later recovered on Pauger Street near Richard's Food Store ("Richard's").

NOPD Detective David Jones ("Det. D. Jones") testified that on the morning of January 7, 2022, he was dispatched to assist a few other NOPD detectives in conducting a surveillance operation at Richard's, which is located on the corner of Allen and Rocheblave Streets.  According to Det. D. Jones, R.B. was arrested together with J.K. and the other two juveniles. At the time of his arrest, R.B. was illegally carrying a rifle and was in possession of Mr. Rumsey's car key, which was hooked onto his pants.[11]  Det. D. Jones confirmed that R.B. was arrested

---

[10] The State offered, filed and introduced into evidence the Jena Street footage.

[11] While Det. D. Jones was at NOPD's central evidence and property cages, where vehicles are stored, he verified that the Jeep key seized from R.B. accessed Mr. Rumsey's Jeep.

7

wearing the identical gray hooded sweatshirt, stonewash jeans and white glove as seen in the Constance Street footage.

At the conclusion of the hearing, on March 28, 2022, the juvenile court orally adjudicated R.B. delinquent on one count of principal to attempted second degree murder, one count of principal to aggravated second degree battery, one count of principal to armed robbery, one count of the unauthorized use of a motor vehicle and one count of the illegal carrying of weapons. R.B. waived all sentencing delays. Following, the juvenile court imposed dispositions of juvenile life for principal to attempted second degree murder, juvenile life for principal to aggravated second degree battery, juvenile life for principal to armed robbery, two years for the unauthorized use of a motor vehicle and six months for illegal carrying of weapons. R.B.'s dispositions are to run consecutively.[12]

This timely juvenile delinquency appeal followed.

## ERRORS PATENT

This Court has adopted a practice of reviewing the face of the record in juvenile delinquency appeals for errors patent. *State in Interest of J.P.*, 2019-0542, p. 2 (La. App. 4 Cir. 9/25/19), 280 So.3d 245, 247-48 (wherein this Court set forth that "pursuant to La. Ch.C. art. 104 and La. C.Cr.P. art. 920, 'conducting an error patent review in juvenile delinquency proceedings is warranted'" (quoting *State ex rel. A.H.*, 2010-1673, p. 9 (La. App. 4 Cir. 4/20/11), 65 So.3d 679, 685). A review of the face of the record reveals two errors patent, R.B.'s double jeopardy challenge and a defect in the judgment of disposition, both of which will be more

---

[12] The juvenile court ordered R.B.'s sentences to run consecutively because he is currently serving a sentence for prior offenses.

8

fully discussed, *infra*, because R.B. assigns these errors patent as his second and third assignments of error, respectively.[13]

## DISCUSSION

R.B. assigns four errors in the juvenile court's judgment: (1) the State's evidence was insufficient to prove beyond a reasonable doubt that R.B. committed the offenses; (2) the charges of attempted second degree murder and aggravated second degree battery violate the double jeopardy clause; (3) the juvenile court erred in adjudicating R.B. delinquent for the armed robbery of Mr. Estrella and illegal possession of a handgun by a juvenile, within which R.B. was not charged with these offenses in the Petition; and (4) trial counsel was ineffective in not pursuing the motion to quash based on the grounds of double jeopardy. We will address assignments of error two and four together because they are intertwined and address the remaining assignment of errors separately.

### *Assignment of Error 1: Sufficiency of the Evidence*

R.B. contends that the State failed to negate the possibility that he was misidentified as a perpetrator of the armed robbery of Mr. Crafton or in the assault on Ms. Mantle.[14] Specifically, R.B. argues that the State failed to prove beyond a reasonable doubt that he committed the offense of armed robbery of Mr. Crafton; therefore, the evidence was insufficient to support the delinquency adjudication.[15]

---

[13] *See, e.g., State v. Gibson*, 2003-0647, 2003-0648, p. 7 (La. App. 4 Cir. 2/4/04), 867 So.2d 793, 798 (citing *State v. Thomas*, 1999-2219, pp. 4-5 (La. App. 4 Cir. 5/17/00), 764 So.2d 1104, 1108; *State v. Harris*, 1998-2932, pp. 5-6 (La. App. 4 Cir. 5/3/00), 761 So.2d 662, 666) (wherein this Court found that a double jeopardy challenge raised on appeal as an assignment of error is an error patent); *see also State in Interest of A.P.*, 2020-0623, p. 6 (La. App. 4 Cir. 4/21/21) 317 So.3d 887, 890 (wherein this Court found that an apparent discrepancy between the judgment of disposition and transcript is an error patent).

[14] R.B. does not challenge his remaining adjudicated delinquencies of the unauthorized use of Mr. Rumsey's Jeep and the illegal carrying of weapons.

R.B. further argues that because the video footage showed only that two females committed the offenses on Ms. Mantle, the State failed to establish that he possessed the requisite intent to commit the offenses against her.

It is well-settled that "[w]hen reviewing the sufficiency of the evidence in juvenile cases, the standard of review is whether, viewing all of the evidence in a light most favorable to the prosecution, the juvenile court committed manifest error in finding beyond a reasonable doubt that the juvenile committed a delinquent act." *State in Interest of C.R.*, 2019-0917, p. 5 (La. App. 4 Cir. 1/29/20), 290 So.3d 220, 223 (citing *State v. C.N.*, 2011-0074, pp. 4-5 (La. App. 4 Cir. 6/29/11), 69 So.3d 711, 714); *see also Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979). Review requires the appellate court to "determine that the evidence was sufficient to convince a rational trier of fact 'that all of the elements of the crime had been proved beyond a reasonable doubt.'" *Id.*, 2019-0917, p. 6, 290 So.3d at 223 (citing *State v. Neal*, 2000-0674, p. 9 (La. 6/29/01), 796 So.2d 649, 657). In order to adjudicate a juvenile delinquent, the State must prove the identity of the perpetrator and each element of the offense. *State in Interest of A.P.*, 2020-0623, p. 8 (La. App. 4 Cir. 4/21/21), 317 So.3d 887, 892 (citing *State in the Interest of K.D.*, 2013-1274, p. 6 (La. App. 4 Cir. 4/9/14), 140 So.3d 182, 186).

"The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. R.S. 15:438. A reasonable hypothesis of innocence must sufficiently lead a rational fact finder to entertain a reasonable

---

[15] R.B. also argues that the juvenile court erred in adjudicating him delinquent for the armed robbery of Mr. Estrella because the State did not charge him with this offense in the Petition. This issue will be discussed more fully, *infra*, in R.B.'s third assignment of error.

doubt about guilt. *See State v. Sutton,* 436 So.2d 471, 474 (La. 1983). Recently, this Court in *State v. Gilliam*, 2021-0506, p. 13 (La. App. 4 Cir. 3/10/22), 336 So.3d 513, 523, (quoting *State v. Pigford*, 2005-0477, pp. 5-6 (La. 2/22/06), 922 So.2d 517, 520-21), *writ denied*, 2022-00537 (La. 6/8/22), 338 So.3d 1194, *and writ denied*, 2022-00601 (La. 6/8/22), 338 So.3d 1197, set forth:

> [R]elying on circumstantial evidence to prove one or more elements of the crime, when the fact-finder reasonably rejects the hypothesis of innocence advanced by the defendant at trial, that hypothesis fails, and the verdict stands unless the evidence suggests an alternative hypothesis sufficiently reasonable that rational jurors could not find proof of the defendant's guilt beyond a reasonable doubt.

Accordingly, "[i]t is not the function of the appellate court to assess the credibility of witnesses or reweigh the evidence." *State v. Dukes*, 2019-0172, p. 8 (La. App. 4 Cir. 10/2/19), 281 So.3d 745, 752 (citing *State v. McGhee*, 2015-2140, 2015-2141, p. 2 (La. 6/29/17), 223 So.3d 1136, 1137; *State v. Scott*, 2012-1603, p. 11 (La. App. 4 Cir. 12/23/13), 131 So.3d 501, 508). "Credibility determinations, as well as the weight to be attributed to the evidence, are soundly within the province of the trier of fact." *Id.* (citing *Scott*, 2012-1603, p. 11, 131 So.3d at 508).

*Principal to a Crime*

A principal to a crime is defined as "[a]ll persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime. . . ." La. R.S. 14:24. "[A]n individual may only be convicted as a principal for those crimes which he personally has the requisite mental state." *State ex rel. G.B.*, 2007-1577, p. 5 (La. App. 4 Cir. 5/14/08), 985 So.2d 828, 831 (quoting *State v. Brooks*, 505 So.2d 714, 717 (La. 1987)). "A person who aids and abets another in a crime is

11

liable just as the person who directly commits it, although he may be convicted of a higher or lower degree of the crime, depending upon the mental element proved at trial." *State v. Clark*, 52,256, pp. 5-6 (La. App. 2 Cir. 11/14/18), 259 So.3d 1178, 1184 (citing *State v. Watson*, 397 So.2d 1337, 1342 n.10 (La. 1981); *State v. White*, 42,725, p. 9 (La. App. 2 Cir. 10/24/07), 968 So.2d 901, 907). "Not all principals are automatically guilty of the same grade of offense as the main offender because the mental state of the offenders may be different." *State v. Runyon,* 2005-36, p. 17 (La. App. 3 Cir. 11/2/05), 916 So.2d 407, 420 (quoting *State v. Mitchell*, 1999-3342, p. 5 (La. 10/17/00), 772 So.2d 78, 82). Consequently, "[t]he intent of the accomplice cannot be inferred to the accused." *Id.* (citing *Mitchell*, 1999-3342, p. 6, 772 So.2d at 82).

With these precepts in mind, we will now turn to R.B.'s counts and address each in the order of its occurrence.

*Principal to Armed Robbery of Mr. Crafton*

This Court in *State in Interest of J.K.*, 2022-0308, pp. 12-13, ___ So.3d ___, ___, 2022 WL 2712521, at *6, found that the evidence was sufficient to identify J.K. as the offender and adjudicate her delinquent of the armed robbery charge as it related to Mr. Crafton. R.B. was charged with the armed robbery against Mr. Crafton but was adjudicated delinquent of the lesser offense of principal to armed robbery.

"The elements of armed robbery are: (1) the taking, (2) of anything of value, (3) from a person of another or in the immediate control of another, (4) by the use of force or intimidation, (5) while armed with a dangerous weapon." *State ex rel. C.J.*, 2010-1350, p. 7 (La. App. 4 Cir. 2/9/11), 60 So.3d 46, 51 (quoting *State v. Carter*, 1999-2234, p. 31 (La. App. 4 Cir. 1/24/01), 779 So.2d 125, 144). "The

12

State bears the burden of proving the elements of the charged offense, as well as the identity of the defendant as the perpetrator." *State in Interest of T.B.*, 2020-0929, p. 8 (La. App. 1 Cir. 2/19/21), 320 So.3d 1143, 1150 (citing *State v. Draughn*, 2005-1825, p. 8 (La. 1/17/07), 950 So.2d 583, 593). Evidence is sufficient for principal to armed robbery if it shows that the offender was "concerned in the commission of" taking something of value from the victim by force and intimidation, while carrying a firearm. *Clark*, 52,256, p. 5, 259 So.3d at 1183 (citing La. R.S. 14:24).

On this charge, review of the State's evidence reflects that on January 6, 2022, two males first exited the Jeep on Constance Street and surrounded Mr. Crafton's vehicle. The Constance Street footage shows that one of the males who exited the Jeep fits the description of R.B. – a short-statured male wearing a gray hooded sweatshirt, stonewash jeans and a white glove, who was carrying a short-barreled rifle. After R.B. and his male accomplice returned to the Jeep, it was then that J.K. and her female accomplice exited the Jeep, approached Mr. Crafton and forcefully took items of value belonging to him by pressing a firearm against his head and stomach. Further review of both the Constance Street footage and the photographs taken at the time of R.B.'s arrest clearly depict R.B. wearing identical clothing and a white glove, while carrying an identical short-barreled rifle. The evidence shows that R.B. was present and scoping out Mr. Crafton and his vehicle in an effort to give his female accomplices the opportunity to rob Mr. Crafton of his car key and cellphone by gunpoint.

We therefore conclude that R.B. was concerned in the commission of the armed robbery of Mr. Crafton, and that the State's uncontroverted evidence was reasonably sufficient to identify R.B. and adjudicate him delinquent beyond a

reasonable doubt of the lesser offense of principal to armed robbery. This claim lacks merit.

*Principal to Attempted Second Degree Murder of Ms. Mantle*

In *State in Interest of J.K.*, 2022-0308, pp. 15-17, 2022 WL 2712521, at *7-8, this Court affirmed J.K.'s delinquency adjudication of attempted second degree murder against Ms. Mantle. Specifically, this Court found that the State's evidence sufficiently showed that J.K., R.B.'s accomplice, had the specific intent to kill when J.K. aimed her firearm at Ms. Mantle as Ms. Mantle fled in her vehicle, and that J.K. completed an overt act in an attempt to kill Ms. Mantle by pulling the firearm's trigger. The State did not charge R.B. as a principal to armed robbery of Ms. Mantle. Rather, R.B, the non-shooter, was charged and adjudicated delinquent of principal to attempted second degree murder of Ms. Mantle. In reaching its conclusion, the juvenile court reasoned that R.B. was the driver of the Jeep at the time J.K. and her accomplice attempted to kill Ms. Mantle.

Second degree murder is the killing of a human being when the offender has a specific intent to kill or inflict great bodily harm. *See* La. R.S. 14:30.1(A)(1). Specific intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1). Thus, for a delinquency finding of the attempted second degree murder, the State must prove beyond a reasonable doubt that the perpetrator:

> (1) intended to kill the victim; and (2) committed an overt act tending toward the accomplishment of the victim's death. La. R.S. 14:27; 14:30.1. Although the statute for the completed crime of second degree murder allows for a conviction based on "specific intent to kill or to inflict great bodily harm," La. R.S. 14:30.1, attempted second degree murder requires specific intent to kill. *State v. Huizar,* 414 So.2d 741 (La. 1982). Specific intent may be

14

inferred from the circumstances surrounding the offense and the conduct of the defendant.

*State ex rel. G.B.*, 2007-1577, p. 4, 985 So.2d at 830 (quoting *State v. Bishop*, 2001-2548, p. 4 (La. 1/14/03), 835 So.2d 434, 437) (citing La. R.S. 14:10(1); *State v. Butler*, 322 So.2d 189 (La. 1975); *State v. Martin*, 1992-0811 (La. App. 5 Cir. 5/31/94), 638 So.2d 411).

"[T]o demonstrate that the non-shooter had the specific intent to kill, the State was required to establish that the circumstances indicated that the non-shooter, the defendant in this case, also actively desired the death of the victim." *State v. Cooks*, 2011-0342, pp. 15-16 (La. App. 4 Cir. 12/14/11), 81 So.3d 932, 941 (citing *State v. Holmes*, 388 So.2d 722, 726-27 (La. 1980)). "The shooter's specific intent [to kill] *cannot* be transferred to the principal; '[a]n individual may only be convicted as a principal for those crimes for which he personally has the requisite mental state.'" *Id.* (citing *State v. Bridgewater*, 2000-1529, pp. 10-11, (La. 1/15/02) 823 So.2d 877, 890 (quoting *State v. Pierre,* 93-0893, p. 4 (La. 2/3/94), 631 So.2d 427, 428)). "Although factors that can contribute to the finding that a defendant is a principal include standing by at the scene of the crime ready to give some aid if needed . . . *it is necessary that the principal actually be aware of the accomplice's intention.*" *State v. Varnado*, 2019-0330, p. 22 (La. App. 4 Cir. 1/29/20), ___So.3d___, ___, 2020 WL 476793, at *10, *writ granted, reversed on other grounds*, 2020-00356 (La. 6/3/20), 296 So.3d 1051, *reconsideration denied*, 2020-00356 (La. 11/18/20), 304 So.3d 415, *and on reconsideration*, 2019-0330 (La. App. 4 Cir. 6/24/20), 302 So.3d 122. (internal quotation marks omitted) (emphasis added).

This Court, in *State ex rel. G.B.*, 2007-1577, 985 So.2d 828, considered whether there was sufficient evidence to adjudicate the juvenile delinquent as a principal to attempted second degree murder. In that case, five boys, including G.B., were involved in an altercation that resulted in the shooting of two victims. Although the juveniles disputed the occurrence of events, the victims testified that one of G.B.'s accomplices got into a verbal altercation with him while at a convenience store, pulled a gun out and then shot him in the back of the head. The victim further testified that G.B. was present, watched the incident, did nothing to prevent the attempted killings and thereafter all the perpetrators fled the scene. G.B. was arrested and charged with two counts of attempted first degree murder of the two victims, which was later reduced to simple battery after a probable cause hearing.

Following G.B.'s guilty plea to simple battery, the adjudication hearing commenced. At the conclusion of the hearing, the juvenile court adjudicated G.B. delinquent relative to attempted second degree murder. Specifically, the juvenile court explained:

> [G.B.] had the specific intent to kill or inflict great bodily harm upon the victim, T.H. The juvenile may not have initially been aware of the presence of the second victim, R.R. The juvenile went in search of the intended victim while his accomplices were in possession of a firearm. Upon locating the intended victim and the second victim, the juvenile participated in the altercation, did nothing to prevent the attempted killings, and assisted in efforts to hide the facts of the case. In his presence, without provocation, deadly force was used to inflict great bodily harm upon the victims.

*Id.*, 2007-1577, p. 6, 985 So.2d at 831-32. G.B. appealed.

On appeal, G.B. contended that the juvenile court erred in adjudicating him delinquent of attempted second degree murder on the grounds of insufficient evidence because no evidence introduced to prove his mental state or his specific

intent. Further, G.B. maintained that his only involvement in the shooting was his mere presence at the crime scene. Finding that there was no dispute that G.B. was not the shooter, this Court considered whether the record sufficiently showed that G.B., at the least, was principal to attempted second degree murder.

This Court, in reversing the juvenile court's judgment, explained that the State failed to prove that the defendant had the specific intent to kill the victim. This Court noted that there was no testimony presented at the adjudication hearing to conclude that G.B. fought anyone or committed any act in furtherance of the crime. This Court concluded that G.B.'s "presence at and flight from the scene [was] not enough to have found him guilty of attempted second degree murder [or principal to attempted second degree murder]." *Id.*, 2007-1577, p. 7, 985 So.2d at 832 (citing *State v. Wright*, 2001-0322, p. 9 (La. 12/4/02), 834 So.2d 974, 983 (wherein the Supreme Court noted that "more than mere presence and subsequent flight from the scene is required to be found guilty as a principal" in murder cases requiring specific intent.)).

For comparison, we reviewed the following cases where defendants have been found guilty as principals: *State v. Alford*, 2014-1358 (La. App. 1 Cir. 4/24/15), 2015 WL 1915260, at *1 (wherein the reviewing court found that the evidence was sufficient to prove that the driver of a vehicle fleeing from the police had the specific intent to kill, when the driver told his two passengers that they needed to get the pursuing officer to "back up," and to get him "off of us," and a passenger then repeatedly fired a shotgun at the officer); and *State v. Curtis*, 2011-1676 (La. App. 4 Cir. 3/13/13), 112 So.3d 323 (wherein the defendant driver – who's co-defendant fired a fatal shot at the victim – was found to be a principal to the second degree murder of [the victim], having possessed the specific intent to

kill or inflict great bodily harm when he "aided and abetted co-defendant into killing the victim by driving the vehicle and slowing down or stopping it to allow co-defendant to take aim and fire the fatal shot").[16]

In the case *sub judice*, at the time of his arrest, R.B. had on his person Mr. Rumsey's car key, which suggests that he was the driver of the Jeep during the commission of the crimes. Notwithstanding, review of the record shows the State failed to present any evidence to show that R.B. possessed the requisite mental state or desire to kill Ms. Mantle. Moreover, there was no testimony adduced at the adjudication hearing to conclude that R.B. committed any acts in furtherance of the attempted second degree murder of Ms. Mantle, or that he was actually aware of his accomplice's intention to shoot and kill Ms. Mantle. In addition, based on their own testimony, neither Ofcs. T. Jones nor D. Jones were able to identify a male fitting the description of R.B. in the Jena Street footage. To the contrary, Ofc. T. Jones testified that the Jena Street footage clearly depicts J.K. and her

---

[16] *See also State v. Meyers*, 1995-750, p. 11 (La. App. 5 Cir. 11/26/96), 683 So.2d 1378, 1384, where the appellate court found that the driver and a passenger of a car involved in a drive-by shooting possessed the specific intent to support their convictions as principals to second degree murder. Neither Meyers (the driver) nor Davis (a passenger) possessed a weapon, and the fatal shot was fired by their companion (Delmar). The court reasoned:

> In the present case, neither Meyers nor Davis tried to assist the victim, George, after the shooting. They did not call the police to report the shooting or give any statement regarding the murder to anyone. Meyers drove the Cutlass to the scene and Davis watched the incident thru (sic) the car window. Although there was no direct evidence presented that either Meyers or Davis knew Delmar was armed, it can easily be assumed that the jury believed that all three knew exactly what their purpose was in confronting George on the street that night. This was a drive-by shooting quite common in the lives of drug dealers and the participants here all knew that Delmar intended to shoot Samuel George. They were definitely not an innocent driver and passenger in the car.

*Id.* 1995-750, pp. 10-11, 683 So.2d at 1384.

female accomplice from the armed robbery of Mr. Crafton, firing gunshots at Ms. Mantle. Although specific intent of a principal to a crime may be inferred from the circumstances of the transaction, the evidence only supports a conclusion that J.K. and her female accomplice were the perpetrators criminally liable for the attempted second degree murder against Ms. Mantle.

Accordingly, viewing the circumstantial evidence in the light most favorable to the prosecution, we conclude the State failed to prove beyond a reasonable doubt that R.B. possessed the requisite mental state as a principal to attempted second degree murder. This claim has merit.

*Principal to Aggravated Second Degree Battery of Ms. Mantle*

This Court, in *State in Interest of J.K.*, 2022-0308, pp. 11-12, 2022 WL 2712521, at *6, also affirmed the juvenile court's delinquency finding of J.K.'s aggravated second degree battery committed against Ms. Mantle. This Court found that Ms. Mantle suffered serious bodily injury when J.K. intentionally fired gunshots at her, striking her in her right triceps, with the intent to commit great bodily harm, as Ms. Mantle was fleeing the crime scene. R.B. was charged with the crime of aggravated second degree battery against Ms. Mantle. However, the juvenile court adjudicated R.B. of a lesser offense, principal to aggravated second degree battery.

"Aggravated second degree battery is a battery committed with a dangerous weapon when the offender intentionally inflicts seriously bodily injury." La. R.S. 14:34.7(A). For a delinquency of aggravated second degree battery, the State must prove: "1) the intentional use of force or violence upon the person of another, 2) using a dangerous weapon, 3) without the consent of the victim, and 4) when the offender has the specific intent to inflict serious bodily injury." *State v. Clanton*,

2019-0316, p. 6 (La. App. 4 Cir. 11/6/19), 285 So.3d 31, 36 (citing La. R.S. 14:34.7). Specific criminal intent is defined as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1). Moreover, evidence is sufficient for principal to aggravated second degree battery if it shows that an offender is "concerned in the commission of" the intentional infliction of serious bodily injury upon the victim with a dangerous weapon. *Clark*, 52,256, p. 11, 259 So.3d at 1186.

Having found that the State failed to produce evidence to show that R.B. was one of the perpetrators depicted in the Jena Street footage, or that he possessed the mental state to kill Ms. Mantle, it follows that the State also failed to prove that R.B. had the requisite mental state to inflict serious bodily injury against Ms. Mantle. Accordingly, we find that the evidence was insufficient to adjudicate R.B. delinquent of a lesser offense of principal to aggravated second degree battery.

In conclusion, we find that the State negated every reasonable probability of misidentification of R.B. as principal to armed robbery of Mr. Crafton. Specifically, R.B. was seen in the Constance Street footage wearing the same clothing he was wearing at the time of his arrest – gray hooded sweatshirt, stonewash jeans and a white glove. The Constance Street footage also depicts R.B. entering and exiting the Jeep armed with the identical short-barreled rifle he was illegally carrying at the time of his arrest. In contrast, the State's evidence was insufficient in establishing that R.B. possessed the requisite mental state with which to adjudicate R.B. delinquent of principal to attempted second degree murder and principal to aggravated second degree battery. As previously set forth, specific intent of a perpetrator, J.K. and her female accomplice, cannot be

20

transferred to the non-shooter, R.B. Thus, R.B. cannot be held criminally liable for the offenses committed against Ms. Mantle. Accordingly, we affirm R.B.'s delinquency of principal to armed robbery, but we reverse R.B.'s delinquency adjudications of principal to both attempted second degree murder and aggravated second degree battery.

***Assignment of Errors 2 and 4: Double Jeopardy and Ineffective Assistance***

R.B. argues in his second assignment of error that because principal to attempted second degree murder is a responsive verdict to aggravated second degree battery, the same evidence test applies and the double jeopardy clause of the Fifth Amendment to the United States Constitution precludes charging and adjudicating him delinquent of both counts. To address the issue of double jeopardy, R.B. filed a motion to quash in the juvenile court on March 14, 2022. In his fourth assignment of error, R.B. maintains that due to his trial counsel's failure to pursue the motion to quash on the issue of double jeopardy, he received ineffective assistance of counsel. Having found that the State's evidence was insufficient for the juvenile court to adjudicate R.B. delinquent of principal to attempted second degree murder and a lesser offense of principal to aggravated second degree battery, we pretermit any discussion of these assigned errors.

***Assignment of Error 3: Defective Judgment of Disposition***

R.B. argues that the juvenile court, in its written judgment, erred in adjudicating and sentencing him as a delinquent for committing the offense of armed robbery against Mr. Estrella and of being a minor in possession of a handgun when he was not charged in the Petition with committing those offenses. R.B. contends that a remand is necessary for correction of the written judgment of disposition. We agree.

21

Review of the Petition reflects that R.B. was charged with one count of principal to attempted second degree murder, one count of aggravated second degree battery, one count of armed robbery against Mr. Crafton in addition to one count of illegal carrying of weapons. At the adjudication hearing, the following exchange ensued between the juvenile court and defense counsel:

> THE COURT: [R.B.] was charged with one count of principal to attempted [ ] second-degree murder. One count of aggravated second degree battery.
>
> THE COURT: One county (sic) of armed robbery.
>
> [DEFENSE COUNSEL]: Yes.
>
> THE COURT: One count of illegal carrying of weapons.
>
> [DEFENSE COUNSEL]: Yes, Your Honor.
>
> THE COURT: Would that be correct as to all the charges of [R.B.]?
>
> [DEFENSE COUNSEL]: Yes, that is the petition he answered to.
>
> *       *       *
>
> THE COURT: As a result of all the information that's been provided, I adjudicate you delinquent principal to attempted second-degree murder. Principal as to an armed robber[y], unauthorized use of a motor vehicle and illegal carrying of weapon. . . you are adjudicated delinquent as to all counts. As to the aggravated second-degree battery, I'm going to adjudicate him of a lesser offense and that is a principal to an aggravated second degree battery.

Immediately following, at the disposition hearing, the juvenile court stated:

> THE COURT: In regards to a principal to attempted second degree murder, [R.B.], you are adjudicated to juvenile life. In regards to principal of armed robbery; juvenile life. Unauthorized use of a motor vehicle; two years. . . . Illegal carrying of weapons; six months. . . . principal to aggravated second degree battery, juvenile life.

Nevertheless, review of the juvenile court's written judgment reflects that R.B. was adjudicated delinquent of two counts of principal to armed robbery (as opposed to one count) and one count of illegal possession of a handgun by a

juvenile, a violation of La. R.S. 14:95.8 (as opposed to illegal carrying of weapons, a violation of La. R.S. 14:95(A)).[17] The written judgment also erroneously sets forth dispositions of juvenile life "as to each count" of principal to armed robbery and six months as to illegal possession of a handgun by a juvenile. Thus, there is clearly a discrepancy between the transcript of the adjudication and disposition hearings and the written judgement.

In *State in Interest of C.L.*, 2015-435, p. 5 (La. App. 5 Cir. 11/19/15), 180 So.3d 604, 607, the juvenile was charged with simple escape. The adjudication hearing transcript reflected that the juvenile admitted to committing the offense as charged, and during the disposition hearing, the juvenile court imposed a sentence for simple escape. However, the juvenile court's minute entry-judgment reflected that the juvenile was adjudicated delinquent of a lesser offense of attempted simple escape. The Office of Juvenile Justice appealed. On appeal, the reviewing court recognized the discrepancy between the "transcript and the . . . minute entry-judgment" as an error patent that required correction. *Id.* The appellate court concluded that "[w]here there is a conflict between the transcript and the minute entry, the transcript prevails," and it remanded the "matter to the juvenile court with instructions to amend the minute entry-judgment to reflect the proper offense for which [the juvenile] was adjudicated as reflected in the transcript." *Id.* (citing *State in the Interest of B.D.*, 2013-760 (La. App. 5 Cir. 4/23/14), 140 So.3d 308, 314); *see also State in Interest of A.P.*, 2020-0623, p. 6, 317 So.3d at 890 (citing *State v. Lynch*, 441 So.2d 732, 734 (La. 1983)) (wherein this Court explained that

---

[17] La. R.S. 14:95 was amended and approved on May 26, 2022. *See* 2022 La. Sess. Law Serv. Act 126 (S.B. 53) (WEST). However, La. R.S. 14:95 as amended does not apply to the present case because the crime spree, R.B.'s charge and adjudicated delinquency occurred before the amendment was approved.

23

"[g]enerally, when there is a discrepancy between the minutes and the transcript, the transcript prevails," and when such a discrepancy exists, the written judgment is to be remanded to the juvenile court for correction of the error to reflect the transcript).[18]

In the case *sub judice*, we conclude that a remand of the matter is warranted for correction of the written judgment to reflect the adjudicated delinquencies and dispositions relative to the charges R.B. answered to in the Petition – principal to one count of armed robbery and illegal carrying of weapons. This assignment of error has merit.

## CONCLUSION

Based on the foregoing, we affirm R.B.'s delinquency adjudication of principal to armed robbery, we reverse R.B.'s delinquency adjudication of principal to attempted second degree murder and principal to aggravated second degree battery, and we remand this matter to the juvenile court with instructions to correct the written judgment to properly reflect the offenses for which R.B. was adjudicated and sentenced in the transcript.

**AFFIRMED IN PART;**
**REVERSED IN PART;**
**AND REMANDED**
**WITH INSTRUCTIONS**

---

[18]*In State in Interest of A.P.*, p. 6, 317 So.3d at 890, although there was a discrepancy between the transcripts and written judgment that warranted a correction by the juvenile court, this Court – finding that the evidence was insufficient – declined to remand the matter to correct the record and vacated the judgment.